## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VERNON ROSS and DEBRA JOSEY, | ) | |
| | ) | |
| On behalf of themselves and all others | ) | |
| similarly situated, | ) | Civil No. _____ |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CLASS ACTION |
| | ) | |
| LOCKHEED MARTIN CORP., | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

## COMPLAINT

Plaintiffs Vernon Ross and Debra Josey, for their Complaint against Lockheed Martin Corporation, allege and state as follows:

### I. Nature of the Claim

1.      Plaintiffs assert both disparate impact and disparate treatment discrimination claims against Lockheed Martin Corporation ("Lockheed Martin" or "Company") on behalf of a class of salaried non-represented African-American employees below the level of Vice President who received at least one performance evaluation between January 1, 2013 and February 29, 2016, with an overall rating below "significantly exceeded commitments" while employed at Lockheed Martin.

### II. Jurisdiction, Venue, and Exhaustion of Remedies

2.      Plaintiffs' claims arise under 42 U.S.C. § 1981, *et seq.*, § 1981a, *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*  This Court has jurisdiction over the claims pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. §§ 1331 and 1343(a)(4).

3.      Venue is proper in this district for the claims under 42 U.S.C. § 1981 pursuant to 28 U.S.C. § 1391(b)(1), because Lockheed Martin meets the venue requirements of 28 U.S.C. § 1391(c)(2). The parties agree to venue in this district for the claims under Title VII.

4.      Plaintiff Ross exhausted his administrative remedies pursuant to 42 U.S.C. § 2000e-5(f).  He filed a charge of discrimination against Lockheed Martin with the U.S. Equal Employment Opportunity Commission ("EEOC"), which automatically was cross-filed with the Maryland Commission on Human Relations, and then was transferred by the EEOC to the Pennsylvania Human Relations Commission because he worked in Pennsylvania.  Plaintiff Ross obtained a Right to Sue letter from the EEOC.

5.      Plaintiff Josey exhausted her administrative remedies pursuant to 42 U.S.C. § 2000e-5(f).  Plaintiff Josey filed a charge of discrimination against Lockheed Martin with the EEOC, which automatically was cross-filed with the Maryland Commission on Human Relations.  She is in the process of obtaining a Right to Sue letter from the EEOC.

### III. Parties

6.      Plaintiff Vernon Ross is an African-American resident and citizen of Pennsylvania.  He was employed by Lockheed Martin from 1991 to 2015, most recently holding the position of Director of STEM, Generations and Higher Education in Human Resources in a division called Enterprise Operations.   In this position, he was responsible for the design and implementation of the Lockheed Martin STEM Strategy with a focus on K-12, Industry Classroom Connection, Talent Acquisition, and Employee Engagement. Plaintiff Ross has a Bachelor's degree in Computer Science/Mathematics from Jackson State University, a Master of Science degree in Computer Science Education from Philadelphia University, and a Doctorate in Education from Wilmington University.

7.      Plaintiff Debra Josey is an African-American resident and citizen of Florida.  She has been employed by Lockheed Martin since 1994 and its predecessors since 1983.  She is currently serving as a Software Engineering Manager in the Rotary and Mission Systems ("RMS") division in Orlando, Florida. In this position, Plaintiff Josey is responsible for managing all functional activities associated with employees and engaging in process improvement activities supporting her program. Prior to her current position in Florida, Ms. Josey served in the position of Engineering Leadership Development Program Manager in a division called Information Systems & Solutions ("IS&GS") in Maryland. In this position, Plaintiff Josey was responsible for coordinating the selection of participants for the development program, planning and managing annual conferences, and coordinating the content and conduct of the technical development curriculum with local universities.  Plaintiff Josey has a Bachelor's degree in Mathematics from Hampton University and a Master of Science degree in Technical Management from Johns Hopkins University.

8.      Defendant Lockheed Martin Corp. is a Maryland corporation with its principal place of business in Bethesda, Maryland. It is one of the largest aerospace, defense, and technology companies in the world. Lockheed Martin's principal business areas are Rotary and Missions Systems, Enterprise Operations, Aeronautics, Missiles and Fire Control, and Space Systems.

## IV. Facts

11.      Beginning on or after January 1, 2013, Lockheed Martin engaged in a pattern or practice of employment discrimination.  This discrimination has been manifested in Lockheed Martin's performance appraisal system. That system has been flawed in both design and implementation and has produced a disparate impact in performance ratings, and consequently in

the promotions, compensation, and retention of salaried African-American employees below the level of Vice President who are within the class Plaintiffs seek to represent.

**Performance Appraisal System**

12.     Throughout the relevant period, Lockheed Martin has evaluated all non-represented, salaried employees under essentially the same performance appraisal system, although with some changes over time. Lockheed Martin has used this system to select non-represented, salaried employees for annual pay increases, certain bonuses, and long term incentive awards. The system also has affected promotion and retention of employees.  The system has been flawed both in design and implementation thus allowing for racially biased assessments of employees.

13.     Lockheed Martin's performance appraisal system has applied to non-represented, salaried employees in all of its business areas – Aeronautics, Rotary and Missions Systems, Missiles and Fire Control, Space Systems, and Enterprise Operations.

14.     The performance evaluation system has produced a disparate impact based on race in evaluation ratings and, consequently, in the compensation, promotion, and retention of African-American employees.

15.     African-American non-represented, salaried employees below the level of Vice President have received lower overall ratings on their annual performance reviews as compared to similarly situated white employees.  Upon information and belief, the racial disparity in ratings is statistically significant.

16.     African-American non-represented, salaried employees have received these lower ratings largely because of flaws in the design and implementation of the Lockheed Martin performance appraisal system, including the nature of the calibration and validation process.

17.     The performance evaluation cycle at Lockheed Martin has begun with each employee identifying his or her "commitments" while Lockheed Martin identified desired "behaviors" across the Company.

18.     The "commitments," which employees write and managers approve at the beginning of the performance appraisal cycle, have not been required to provide measureable indicators of what must be accomplished in order to achieve a specific performance rating, nor have managers been adequately trained in reviewing these objectives or commitments to provide such indicators. The absence of measurable indicators for achieving commitments has resulted in inadequate safeguards against bias in the assessment of African American employees.

19.     The "behaviors" against which employees are also evaluated, which are specified by Lockheed Martin, do not provide measurable indicators of what must be exhibited in order to achieve a specific rating and therefore also have not provided adequate safeguards against bias in the assessment of African American employees.

20.     At the end of each calendar year, salaried employees have received a performance review.   Managers have provided written comments evaluating how well an employee accomplished his objectives/commitments, and then have assigned preliminary numerical ratings to each commitment and behavior.   A composite score has then been aggregated from these individual numerical ratings.

21.     Managers' comments on employee performance have not consistently relied on specific, measurable, time-sensitive measures of employees' performance. As a result, similar or even identical performance could garner different ratings under different supervisors.

22.     The performance evaluation cycle has ended in calibration and/or validation sessions in which groups of managers and/or executives arrived at ratings for employees who

were compared to each other.  The ultimate goal of the calibration and validation sessions was to place all employees into a forced distribution system in which predetermined percentages of employees received each rating.

23.    The calibration and validation sessions had systemic aspects that allowed an employee's ultimate tier placement to be based on peer comparisons where job duties or commitments between employees at the same level may have been different.  During these sessions, large numbers of employees had to be covered in one meeting in which the discussion of any one employee was cursory at best; employees holding different positions but at the same level were compared against one another; calibration meeting participants were encouraged to give commentary on employees despite not having reviewed the employees' completed performance appraisal forms; and, at times, employees were represented by managers who knew little about their performance if the employees' manager was unavailable to attend a given meeting.  As a result, employees may have been assigned to the forced distribution tiers by persons with little if any direct knowledge of employees' performance based primarily on a brief oral description and other comments by persons with knowledge that was limited.

24.    The appeals process by which an employee may appeal her performance rating has also been flawed and does not rectify the biased assessments resulting from the Company's performance appraisal system. The appeal process is structured so that employees have not had an adequate right to appeal to a manager who was not involved in preparing the review from which they are appealing. Very few appeals are brought or are successful in altering overall ratings.

25.    In addition to the flaws in the performance appraisal system, changes implemented by former Senior Vice President of Human Resources John Lucas increased the

discrimination against African American employees at Lockheed Martin during his tenure from 2009-2015.

26.    John Lucas took actions that diminished Lockheed Martin's efforts to encourage racial diversity at the Company.  Among other things, he downsized recruiting efforts, including efforts to recruit African Americans for salaried positions, and decreased a number of programs aimed at developing employees, including African Americans, for promotion.

**Impact on Compensation**

27.    Disparities in the performance appraisal system have produced a disparate impact on the merit compensation of African American employees at Lockheed Martin.

28.    The performance tiers to which employees have been assigned have directly affected the merit increase, if any, that they have received each year.  Lockheed Martin has created a matrix each year reflecting the standard percentage increase in salary for employees based on their tier and their place in the salary range for their position.  In general, lower increases have been associated with lower rankings.  Upon information and belief, African-American employees in general, and Plaintiffs in particular, have received lower ratings and consequently lower merit increases than they would have in the absence of discrimination in the performance appraisal process

29.    High overall ratings have translated into greater compensation in a second way. Lockheed Martin has bestowed discretionary merit increases on some employees.  Typically, they have been given to employees with overall ratings of "significantly exceeded expectations" with relatively low compa-ratios (the ratio of an employee's salary to the average salary in the industry for employees in comparable positions).

7

30.     Lockheed Martin also has had a variety of monetary awards and bonus programs. For some of those programs the performance tier to which an employee is assigned has affected the size of the award or bonus received, if any.

**Impact on Promotions**

31.     For certain positions at Lockheed Martin, employees may advance through what are called growth promotions.  These promotions represent movement to a higher level within the employees' existing positions and are based in part on employees' sustained performance, which will be reflected in their performance evaluations.  As a result, performance ratings have the potential to affect employees' ability to receive one of these promotions.

32.     Disparities in the performance appraisal ratings have resulted in disparities in the rates at which African American and white employees receive growth promotions at Lockheed Martin. In addition, lower performance appraisal ratings have harmed the opportunities for African American employees to receive competitive promotions on some occasions.

**Impact on Retention**

33.     Lockheed Martin has had disproportionately lower retention rates of African American salaried employees as compared to their white peers.

34.     The disproportionately lower retention rates of African-American employees have been influenced by the flawed performance appraisal system.

## V. <u>Allegations of Representative Plaintiffs</u>

**Debra Josey**

35.     Plaintiff Debra Josey has received lower ratings than similarly situated white employees during her employment at Lockheed Martin despite her stellar performance throughout the period.  The following table shows her ratings by tiers for each year:

| 2012 | 2nd out of 4 tiers |
|------|--------------------|
| 2013 | 3rd out of 4 tiers |
| 2014 | 3rd out of 4 tiers |

36.     The contrast between the absolute ratings for Ms. Josey in 2013 and 2014 and her tier placements are stark.  Her absolute ratings were 4.1 and 3.9, respectively, out of 5.0.  Thus, these ratings show that she substantially exceeded Lockheed Martin's expectations.  Yet her tier rating each year, her rating against her so-called comparators, put her below average.

37.     The contrast between the written comments of Ms. Josey's leaders and the forced distribution rankings that put her performance in the lower half of employees is equally stark.  Ms. Josey had made three commitments in 2014.  Her manager summarized that she "did a good job being proactive" as to the first, had done an "excellent job" as to the second, and "has controlled costs, streamlined processes, and increased productivity" as to the third.  Ms. Josey's manager did not have any negative comments concerning her commitments or her behavioral objectives.  It's unclear what else she should have done to move into the top or second tier.

38.     Ms. Josey has been compared in calibration sessions against both managers and "individual contributors" (Lockheed Martin's term for non-management positions).  However, these employees necessarily have markedly different roles, making any such comparison with Ms. Josey suspect.

39.     Ms. Josey's efforts to seek redress for her low ratings were stymied by Lockheed Martin's flawed appeals process.  On her 2013 performance assessment, Ms. Josey received the second lowest overall rating, "achieved/substantially achieved," even though her absolute rating was 4.1 out of 5.0 points and her leader's comments acknowledged that her work was excellent.

9

She appealed, but her rating was not changed.  Her leader's comments denying the appeal stated that the ranking was correct "from a relative perspective in comparison to the peers she was evaluated with," without further explanation.

40.     As a result of her lower-tier performance ratings, Ms. Josey has been paid less than her white counterparts with the same or less experience during the time that she has maintained employment with Lockheed Martin.

41.     Ms. Josey has not received any long term incentive awards or, in 2013 or 2014, any other bonuses or awards.

42.     Ms. Josey's performance appraisal ratings have also negatively impacted her ability to be promoted within the company.  At least one manager has told Ms. Josey that the absence of a history of consistently high or exceptional performance appraisals would negatively affect her ability to advance at Lockheed Martin.  Her history bears out this prediction.

43.     Ms. Josey applied for at least 55 positions at Lockheed Martin between October 2012 and October 27, 2015, none of which she was offered.  At least thirty-seven of these positions, including 23 for which she had applied in the 300 days before filing her EEOC charge, would have been promotions.  She was selected for interviews for only seven positions.  Several of the positions were closed without anyone being selected to fill the position and Ms. Josey is unaware of who was selected for several other positions.  Of the four positions for which she knows the race of the successful candidate, three were filled by white employees.  She believes that she is more qualified than each of them.

44.     On October 27, 2015, Ms. Josey received notice of a reduction in force that would result in her layoff on December 11, 2015.  Upon information and belief, she would not have been selected if she had received higher ratings.  After receiving the termination notice, Ms.

Josey applied for at least 55 jobs, some of which were below her current level of employment, and received one offer at her current level, Level 5, as a Software Engineering Manager in Orlando, Florida.  She accepted that job and relocated to Florida from Maryland.

**Dr. Vernon Ross**

45.     Plaintiff Vernon Ross was employed by Lockheed from 1991 to 2015. Most recently, he held the position of Director of STEM, Generations, and Higher Education in Human Resources in the Enterprise division.

46.     Dr. Ross also received ratings lower than those of similarly situated white employees during his time at Lockheed Martin despite commendable work performance.

47.     Dr. Ross was in the bottom half of ratings in 2013 and 2014 and received average ratings in the year prior. The following table shows his ratings by tier for each year:

| 2012 | 2nd out of 4 tiers |
| 2013 | 3rd out of 4 tiers |
| 2014 | 3rd out of 4 tiers |

48.     The contrast between Dr. Ross's written reviews and his forced distribution rankings shows that ratings have a weak relationship to performance.  Dr. Ross changed jobs in the middle of 2014, and hence received comments from two Vice Presidents on his review.  The VP during the first half of the year did not give summary comments about performance, but none of the specific comments concerning a commitment was negative.  Rather, they included comments such as that the client "is pleased with the results," that Dr. Ross had anticipated and staffed up to meet hiring needs, that his staff "all speak highly of him as a leader," and that he "is very passionate about the team and does reach out to people individually to ensure they are

'energized.'"  The VP during the second half of the year used adverbs such as "successfully," and "effectively," to describe virtually every aspect of Dr. Ross' performance.  According to this VP, Dr. Ross "has been very engaging and a valued contributor to the team."

49.     In 2013 Dr. Ross received a 2.0, which is a below-average rating, on the behavior "Build Effective Relationships."  His leader, an HR Vice President, explained that the low rating was because some clients believed that Dr. Ross was insufficiently proactive rather than reactive. If true – which he denies – this possibly would have an impact on the quality of his performance. It should have nothing to do, however, with building effective relationships, for which the additional verbiage is "Establish enduring, inclusive relationships within Lockheed Martin and with our customers, employees, teammates, and community. Enable mutually beneficial partnerships that take full advantage of internal and external synergies. Understand impact of personal behavior on others and place a high priority on honesty and integrity."

50.     Dr. Ross does not know against whom he was compared at calibration sessions, but there are no proper comparators for his position.  Dr. Ross was in unique positions at Lockheed Martin throughout the period from 2011 through 2015 posing unusual challenges. For example, as Director of Workforce Strategy, Analytics, and Acquisition for the Mission Systems & Training division, Dr. Ross had to unite a division recently formed out of two other divisions, integrate employees from acquisitions and reductions in force and site closures, deal with a division that had about 30% lower minority employment than other operating divisions, and handle his duties with a smaller staff than other Directors of Workforce Strategy.  Even if he was calibrated against other Directors in his area, the calibration meeting participants would have to consider the unique challenges that he faced in order to arrive at a proper tier ranking.  However,

his direct manager told him that he was calibrated with all Human Resources Directors, regardless of the wide variations in duties.

51.     During his 24 years of employment with Lockheed Martin, Dr. Ross received only one long term incentive award, in 2011 based on his performance in 2010.  Presumably his award in 2011 was based on his design, implementation and leadership of the first-ever Cyber University and Cybersecurity Talent Management Framework, which over the years has contributed to Lockheed Martin winning new business. Although his job duties changed somewhat in 2011, he still continued to lead the cyber program, but he received no additional long term incentive awards.

52.     Dr. Ross's low ratings also prevented him from advancing within the Company. The next step up for Dr. Ross, who was at the Director level for about 10 years, would have been to a Vice Presidency.  Over the last few years of his employment with Lockheed Martin he was repeatedly bypassed in promotions to a Vice President position in favor of white employees who often had lesser credentials than him.

53.     Dr. Ross's efforts to use the appeal process to rectify his low ratings were unsuccessful. As noted above, on his 2013 performance assessment, Dr. Ross received the second lowest overall rating.  The comments that he received from his direct supervisor did not align with his commitments.  Dr. Ross notified authorities that he intended to appeal.  He received a phone call at home from the Vice-President of Human Resources for Enterprise Operations who proceeded to ask twice if she could talk him out of appealing his rating.  He said no, and proceeded to appeal.  The appeal pointed out the various ways in which he had exceeded his commitments and inaccuracies in his supervisor's comments.  As a result of the appeal, one

of his behavior ratings and one of his commitment ratings were increased, but his overall rating remained unchanged.

54.    On July 28, 2014, Dr. Ross complained internally of the discrimination that he and other African American employees faced at Lockheed Martin.

55.    Shortly after filing his Charge of Discrimination with the EEOC, Dr. Ross received the formal notice of reduction in force that would result in the termination of his employment with Lockheed Martin.

56.    Dr. Ross was unable to find a new job due in significant part to the discriminatorily low appraisal ratings he had received.  After he received formal notice of his reduction in 2015, Dr. Ross unsuccessfully applied to over 40 jobs within Lockheed Martin, the majority of which were at his current level of Director, and some of which were below the Director level.  Dr. Ross did not receive an offer for any of these positions and was terminated effective December 31, 2015.

## VI.  Class Action Allegations

57.    Plaintiffs Ross and Josey bring this class action pursuant to Fed. R Civ. P. 23(a), (b)(2), and (b)(3) on behalf of a class of all African-American salaried employees below the level of Vice President employed by Defendant in the United States for at least one day between January 1, 2013 and February 29, 2016, and who received at least one performance evaluation during that period with an overall rating below "significantly exceeds commitments" ("Class"). However, "Class" expressly excludes: (1) employees who signed release agreements, (2) union-represented employees, (3) individuals who have asserted claims of race discrimination against Lockheed Martin, which remain pending before any local, state or federal agency or in any state or federal court as of the date of preliminary approval; (4) individuals employed by Sandia

Corporation, and (5) individuals who became (or become) employees of Lockheed Martin or one or more of its subsidiaries as a consequence of stock or asset acquisitions consummated on or after January 1, 2012 including, but not limited to, the following transactions: Industrial Defender, Materion Assets, Deposition Sciences, Astrotech AssetsZeta Associates, Sun Catalytix, Systems Made Simple, and Sikorsky.

58.    Plaintiffs are members of the Class they seek to represent.

59.    *Numerosity.*  The Class has over 5,500 members who worked in over 40 states across the United States.  It would be impracticable, because of their numbers to bring all persons in the Class before the Court as individual plaintiffs through joinder.

60.    *Commonality.*  There are questions of law and fact common to the Class such that the common issues may be determined in one trial.  The overarching questions of law and fact that are common to all members of the class are whether Lockheed Martin, through the acts and/or omissions of its management and supervisory workforce, has adopted and/or maintained a policy or practice of employment discrimination in performance appraisal ratings that is generally applicable to the class, and whether flaws in the performance appraisal systems produce a disparate impact against class members. Common questions include, but are not limited to:

(a)    Has Lockheed Martin's performance appraisal system had a disparate impact on performance ratings of African-American salaried employees?

(b)    Has the performance appraisal system been flawed in manners that have resulted in discrimination against class members?

(c)    Have there been disparities in the merit compensation of African-American employees resulting from disparities in performance appraisal ratings?

(d)     Have there been disparities in promotion rates of African-American employees resulting from disparities in performance appraisal ratings?

(e)     Have there been disparities in retention rates of African-American employees resulting from disparities in performance appraisal ratings?

The answers to these questions will largely determine the relief that is appropriate for members of the Class as well as Plaintiffs Ross and Josey, and should thus be the focus of Phase I of the trial, as specified in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 360 (1977).  To the extent that any issues individual to Plaintiffs Ross and Josey and members of the proposed Class remain, those issues can be heard in Phase II of the trial.  *See id.* at 361.

61.     *Typicality.*  The claims of Plaintiffs Ross and Josey are typical of the claims of all class members because they have all been subjected to the same practices of racial discrimination in performance ratings, and derivatively in compensation, advancement, and retention, against African Americans, and their claims all rest on common evidence and are based on common legal theories.

62.     *Adequacy of representation.*     Plaintiffs Ross and Josey are adequate representatives of the Class because: (1) they are willing and able to represent the Class and have every incentive to pursue this action to a successful conclusion; (2) Plaintiff Josey is still employed at Lockheed Martin and has an adequate interest in programmatic relief for purposes of certification under Fed. R. Civ. P. 23(b)(2), and Plaintiff Ross has exhibited a strong interest in programmatic relief even though he no longer is employed by Lockheed Martin; (3) their interests are not in any way antagonistic to those of the other members of the Class; and (4) they are represented by counsel experienced in litigating major class actions in the field of employment discrimination.

16

63.     *Propriety of maintenance of class action under Fed. R. Civ. P. 23(b)(2).*  Class action status is appropriate under Fed. R. Civ. P. 23(b)(2) because Lockheed Martin acted and/or refused to act on grounds generally applicable to the Class, thereby making declaratory and injunctive relief appropriate with respect to Plaintiffs Ross and Josey and the Class as a whole.

64.     *Propriety of maintenance of class action under Fed. R. Civ. P. 23(b)(3).*  Class action status is also appropriate under Fed. R. Civ. P. 23(b)(3).  The common questions of law and fact identified above predominate over questions affecting only individual members.  A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

## Count I

## EMPLOYMENT DISCRIMINATION ON THE BASIS OF RACE
### 42 U.S.C. § 1981
### (On Behalf of Plaintiffs Ross and Josey and the Class)

65.     Plaintiffs Ross and Josey repeat and re-allege the allegations contained in the above paragraphs, as if fully set forth herein.

66.     Plaintiffs Ross and Josey and members of the proposed Class are, or were, African-American persons.

67.     Lockheed Martin intentionally discriminated against Plaintiffs Ross and Josey and members of the proposed Class on the basis of their race by assigning African-American employees lower ratings than other employees in the performance appraisal system, resulting in African-American employees receiving lower compensation, including lower salaries, raises, bonuses, and long term incentive awards, fewer promotions, and a lower retention rate than employees of other races.

68.     Lockheed Martin has violated 42 U.S.C. § 1981, et seq., as it has, among other things, unlawfully discriminated against African Americans in denying them the enjoyment of all of the benefits, privileges, terms, and conditions of their contractual relationship with Lockheed Martin.  It gave them lower performance appraisal ratings, and as a result awarded Plaintiffs and members of the Class lower merit increases and bonuses and lesser job benefits than it awarded to similarly situated white employees, refused to promote them equally, and failed to retain them.

69.     On behalf of themselves and the Class, Plaintiffs Ross and Josey request relief as provided in the Prayer for Relief below.

### Count II

### EMPLOYMENT DISCRIMINATION ON THE BASIS OF RACE
#### Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*
#### (On Behalf of Plaintiffs Ross and Josey and the Class)

70.     Plaintiffs Ross and Josey repeat and re-allege the allegations contained in the above paragraphs, as if fully set forth herein.

71.     Plaintiffs Ross and Josey and members of the Class are, or were, African-American employees of Lockheed Martin within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.

72.     The discriminatory policies and/or practices of Lockheed Martin, as set forth herein, have denied Plaintiffs Ross and Josey and the members of the Class their right to equal employment opportunity in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., in that Lockheed Martin has maintained a pattern or practice of employment discrimination against African-American employees in performance appraisal ratings that has resulted as well in a loss of compensation, including but not limited to salaries,

raises, bonuses and other job benefits, fewer promotions, and disproportionately lower retention rates.

73.     The discriminatory policies and/or practices of Lockheed Martin, as set forth herein, have denied Plaintiffs Ross and Josey and the members of the Class their right to equal employment opportunity in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., have had a disparate impact against African-American employees in performance appraisal ratings that has resulted as well in a loss of compensation, including but not limited to salaries, raises, bonuses and other job benefits, fewer promotions, and disproportionately lower retention rates.

74.     On behalf of themselves and the Class, Plaintiffs Ross and Josey request relief as provided in the Prayer for Relief below.

## Count III

### RETALIATION
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.***
**(on behalf of Plaintiff Ross)**

75.     Plaintiff Ross re-alleges each of the paragraphs above as if fully set forth herein.

76.     Dr. Ross complained internally of the discrimination faced by him and other African American employees at Lockheed Martin and he filed a Charge of Discrimination with the EEOC.

77.     Dr. Ross has suffered an adverse employment action in that Defendant terminated his employment on December 31, 2015.

78.     Dr. Ross has suffered this adverse employment action because Defendant retaliated against him for filing a Charge of Discrimination with the EEOC and/or complaining

19

to senior executives at the Company of racial discrimination faced by him and other African-American employees.

79.     This retaliation has caused substantial financial and monetary harm to Dr. Ross.

### Prayer for Relief

Wherefore Plaintiffs respectfully request this Court to:

a.     Declare that the practices described in this Complaint exist at Lockheed Martin and are unlawful;

b.     Award back pay, bonuses and other job benefits to make the Plaintiffs and Class members whole;

c.     Order Lockheed Martin to adopt policies and practices that end discriminatory treatment of African-American employees;

d.     Award punitive damages appropriate to the proof at trial;

e.     Award reasonable attorneys' fees and costs, including expert fees, pursuant to 42 U.S.C. § 1988;

f.     Order such other and further relief as the Court deems just and proper.

### Jury Trial Demand

The Plaintiffs hereby demand a jury trial of all claims triable to a jury.


Dated: December 23, 2016


Respectfully submitted,


Cyrus Mehri

20

Michael D. Lieder
Joanna K. Wasik
Mehri & Skalet, PLLC
1250 Connecticut Ave., NW
Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997
cmehri@findjustice.com
mlieder@findjustice.com
jwasik@findjustice.com

Charles V. Firth (*pro hac vice* application pending)
Engelmeier & Umanah, P.A.
706 Second Avenue South
Suite 1100
Minneapolis, MN 55402
Telephone: (612) 455-7724
Facsimile: (612) 455-7740
charlief@e-ulaw.com