# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VERNON ROSS and DEBRA JOSEY, | ) | |
| | ) | |
| On behalf of themselves and all others | ) | |
| similarly situated, | ) | Civil No. _____ |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CLASS ACTION |
| | ) | |
| LOCKHEED MARTIN CORP., | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

## PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
## OF CLASS ACTION SETTLEMENT AGREEMENT

Plaintiffs, by and through their counsel and pursuant to Fed. R. Civ. P. 23(e), hereby move the Court for preliminary approval of the proposed Settlement Agreement (attached hereto as Exhibit 1), for preliminary certification of the Settlement Class, for approval of the proposed Notice of Class Action Settlement and Claim Form, for approval of the proposed method of notifying the Class, and for an order temporarily enjoining other actions involving claims encompassed by this Action pending the outcome of the final fairness hearing regarding the proposed settlement.

Plaintiffs ask the Court to make the findings and rulings set forth in the proposed order filed herewith. Plaintiffs also respectfully refer the Court to their memorandum of points and authorities and declaration in support of preliminary approval of the proposed class action settlement.

Defendant does not oppose Plaintiffs' Motion for Preliminary Approval of Class Action Settlement Agreement or the findings and rulings set forth in the proposed order.

WHEREFORE, Plaintiffs pray that the Court grant their motion for preliminary approval of the class action settlement.

Respectfully submitted this 23rd day of December, 2016,

/s/
Cyrus Mehri
Michael D. Lieder
Joanna K. Wasik
Mehri & Skalet, PLLC
1250 Connecticut Ave., NW
Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997
cmehri@findjustice.com
mlieder@findjustice.com
jwasik@findjustice.com

Charles V. Firth (*pro hac vice* pending)
Engelmeier & Umanah, P.A.
706 Second Avenue South Suite 1100
Minneapolis, MN 55402
Telephone: (612) 455-7724
Facsimile: (612) 455-7740

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| VERNON ROSS and DEBRA JOSEY, Individually and on behalf of a class of similarly situated African American employees, | ) ) ) ) ) ) ) Civil No. _____ ) CLASS ACTION |
| Plaintiffs, | ) |
| v. | ) ) |
| Lockheed Martin Corporation, | ) ) |
| Defendant. | ) ) |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF THE PARTIES' JOINT MOTION FOR PRELIMINARY
APPROVAL OF THE PROPOSED CLASS SETTLEMENT**

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ..........................2

        A.    Exhaustion of Administrative Remedies and Investigation .........2

        B.    Settlement Negotiations and the Informal Exchange of Information ..........2

        C.    Resolution of Plaintiffs' Claims ..................................................4

II.     SUMMARY OF THE SETTLEMENT AGREEMENT PROVISIONS ...........5

        A.    Settlement Class Definition ........................................................5

        B.    Schedule for Notice and Fairness Hearing ..................................6

        C.    Releases ........................................................................................7

        D.    Programmatic Relief ....................................................................7

        E.    The Settlement Fund ..................................................................10

        F.    Attorneys' Fees and Expenses ...................................................11

        G.    Confidentiality ...........................................................................12

VI.     THE COURT SHOULD CONDITIONALLY CERTIFY THE PROPOSED
        SETTLEMENT CLASS ..................................................................12

        A.    The Proposed Settlement Class Satisfies Rule 23(a) ................13

              1.    The Class Is So Numerous that Joinder of All Members Is
                    Impracticable ...................................................................13

              2.    Questions of Law and Fact Are Common to the Class ....13

              3.    The Named Plaintiffs' Claims Are Typical of the Class Claims .......15

              4.    The Named Plaintiffs and Class Counsel are Adequate
                    Representatives ................................................................16

        B.    The Proposed Settlement Class Satisfies Rule 23(b) ................18

              1.    Certification Is Appropriate Under Rule 23(b)(2) as to Injunctive
                    Relief ...............................................................................19

              2.    Certification Is Appropriate Under Rule 23(b)(3) as to Monetary
                    Relief ...............................................................................19

VII.    THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED
        SETTLEMENT ..............................................................................21

        A.    Standard for Approval of a Class Settlement ............................21

B.  The Settlement is the Product of Serious, Informed, Non-Collusive
    Negotiations .............................................................................................. 23

C.  The Settlement Falls Within the Range of Possible Judicial Approval ...... 24

D.  The Settlement Is Fair in its Provisions Concerning Notice to Class
    Members and Allocation of Benefits Among Plaintiffs and Class Members
    and Does Not Have Any Glaring Deficiencies .......................................... 27

    1.  The Proposed Form and Method of Notice is Adequate ................... 28

    2.  Monetary Benefits of the Settlement Will be Fairly Distributed
        Among Named Plaintiffs and Class Members................................... 30

    3.  The Fees and Expenses That Will Be Requested are Within the Range
        Of Possible Judicial Approval ......................................................... 30

VI.  CONCLUSION .............................................................................................. 33

**EXHIBITS**

The parties' class action Settlement Agreement is attached as Exhibit A to Plaintiffs' Motion for Preliminary Approval. The Exhibits to the Settlement Agreement, which are referenced in this Memorandum, are as follows:

Exhibit 1:      Complaint

Exhibit 2:      Claim Form
Exhibit 3:      Named Plaintiff General Release

Exhibit 4:      Notice of Class Action

Exhibit 5:      Reminder Notice

In addition, the following exhibits also accompany Plaintiffs' Motion for Preliminary Approval:

Exhibit B:      Declaration of Cyrus Mehri, Counsel for the Plaintiffs

Exhibit C:      Class Member Release

Exhibit D:      Joint Proposed Order

# TABLE OF AUTHORITIES

## Cases

*Abdallah, et. al. v. Coca-Cola Company*, No. 1:98-CV-3679 (N.D. Ga. 2000).............27

*Alvarez v. Keystone Plus Constr. Corp.,* 303 F.R.D. 152 (D.D.C. 2014) ........................22

*Amochaev v. Citigroup Global Markets d/b/a Smith Barney*, No. 3:05-cv-01298-PJH
   (N.D. Cal. 2008)................................................................................................17

*Anchem Prods. v. Windsor*, 521 U.S. 591 (1997) ................................................ 16, 19, 21

*Armstrong v. Bd. Of Sch. Dirs.*, 616 F.2d 305 (7th Cir. 1980) .................................. 22, 23

*Augst-Johnson v. Morgan Stanley & Co.*, No. 1:06-CV-01142
   (D.D.C. Oct. 26, 2007) .................................................................... 11, 17, 24

*Blackman v. District of Columbia*, 454 F. Supp. 2d 1 (D.D.C. 2006) ............................25

*Brown et al v. Medicis Pharmaceutical Corporation,* No. 1:13-cv-1345 (ECF 52)
   (D.D.C. July 11, 2016) ...................................................................... 11, 17, 32

*Bynum v. District of Columbia*, 412 F.Supp.2d 73 (D.D.C. 2006) ..................................32

*Carter v. Wells Fargo Advisors, LLC*, No. 1:09-CV-01752
   (D.D.C. June 9, 2011)......................................................................... 11, 17, 24

*Cohen v. Warner Chilcott Pub. Co.*, 522 F. Supp. 2d 105 (D.D.C. 2007) .......................16

*DL v. District of Columbia*, 2014 U.S. App. LEXIS 1919 (D.C. Cir. 2013)...................19

*DL v. District of Columbia*, 302 F.R.D. 1 (D. D. C. 2013) .............................................19

*DL v. District of Columbia*, 713 F.3d 120 (D.C. Cir. 2013)........................................5, 14

*Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3 (D.D.C. 2010)...........................................15

*Eubanks v. Billington*, 110 F.3d 87 (D.C. Cir. 1997).....................................................19

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1988)...........................................................22

*Greenberg v. Colvin*, 2015 U.S. Dist. LEXIS 85478 (D. D. C. July 1, 2015).................25

*Hubbard v. Donahoe*, 958 F. Supp. 2d 116 (D.D.C. 2013).............................................31

*Hyman v. First Union Corp.*, No. 94-1043 (D.D.C. 1997)................................................18

*In re Air Cargo Shipping Servs. Antitrust Litig.*, Master File No. 06-MD-1175 (JG)(VVP), 2014 U.S. Dist. LEXIS 180914 (E.D.N.Y. Oct. 15, 2014)......................20

*In re District of Columbia*, 792 F.3d 96 (D.C. Cir. 2015)................................................14

*In Re Fannie Mae Securities Litigation*, 4 F. Supp. 3d 94 (D.D.C. Dec. 6, 2013)....passim

*In re Johnson*, 760 F.3d 66 (D.C. Cir. 2014)................................................................14

*In re PEPCO Employment Litig.*, No. 86-0603, 1993 U.S. Dist. LEXIS 7905 (D.D.C. 1993)................................................................................................18

*In re Vitamins Antitrust Litig.*, 209 F.R.D. 251 (D.D.C. 2002) ........................................16

*Ingram v. Coca-Cola Company*, No. 1:98-CV-3679, 200 F.R.D. 685 (N.D. Ga. 2000) ..17

*Kosen v. American Express Financial Advisers, Inc.*, No. 1:02CV00082 (D.D.C. June 16, 2002)................................................................................32

*McLaurin v. Nat'l R.R. Passenger Corp,* 1:98-cv-2019 (D.D.C. 2000)...................... 17, 32

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482 (7th Cir.), *cert denied*, 133 S. Ct. 338 (2012) ..............................................................................5

*McReynolds v. Sodexho Marriott Servs., Inc.*, No. 1:01-CV-00510 (ESH) (D.D.C. July 26, 2006) ................................................................................................32

*Moore v. Napolitano*, 926 F. Supp. 2d 8 (D.D.C. 2013) ................................13, 15, 16, 20

*Moussouris, et al., v. Microsoft Corp.*, C15-1483JLR (W. D. Wa. Oct. 14, 2016) ..........26

*Richardson v. L'Oreal USA, Inc.*, No. 13-508 (JDB), 2013 U.S. Dist. LEXIS 90378 (D.D.C. June 27, 2013)...................................................................................... 22, 23

*Robinson v. Ford Motor Co.*, No. 1:04-CV-00844, 2005 U.S. Dist. LEXIS 11673 (S.D. Ohio 2005) ................................................................................................17

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993) .......................................31

*Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33 (D.D.C. 2007)................................14

*Thornton v. Nat'l R.R. Passenger Corp.*, No. 1:98-cv-890 (D.D.C. 2000)......................17

*Thornton v. National Railroad Passenger Corp.*, No. 1-98-cv-890 (EGS)

(D.D.C. 1998)......................................................................................................32

*Thorpe v. D.C.*, 303 F.R.D. 120 (D.D.C. 2014)............................................13

*Twelve John Does v. District of Columbia*, 117 F.3d 571 (D.C. Cir. 1997) ...................16

*United States v. District of Columbia*, 933 F. Supp. 42 (D.D.C. 1996)..........................22

*United States v. MTU Am. Inc.,* 105 F. Supp. 3d 60 (D.D.C. 2015)...............................22

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)......................................5, 14, 18

*Winingear v. City of Norfolk*, 2014 U.S. Dist. LEXIS 97392 (E.D. Va. 2014)...............23

**Rules**

Fed. R. Civ. P. 23(a) .....................................................................................................14

Fed. R. Civ. P. 23(b)(2) ................................................................................................19

Fed. R. Civ. P. 23(b)(3) ..........................................................................................19, 20

Fed. R. Civ. P. 23(e)........................................................................................13, 22, 24, 35

**Other Authorities**

5-23 Moore's Federal Practice §23.80[2-1].....................................................................13

Malos, *The Importance of Valid Selection and Performance Appraisal: Do Management Practices Figure in Case Law?,* Employment Discrimination Litigation 383 (2004)..26

*Manual for Complex Litigation* (Fourth) § 21.632 (2004) ........................................13, 24

*Manual for Complex Litigation (Third)* § 30.41 (1995)..................................................23

Manual for Complex Litigation, § 1.46...........................................................................23

Meredith L. Myers, *Grades Are No Longer Just For Students: Forced Ranking, Discrimination, and the Quest to Attain a More Competent Workforce*, 33 Seton Hall L. Rev. 681 (2003) .....................................................................................................26

*Newberg on Class Actions* § 11.41 (3d ed. 1992) ..........................................................24

Tom Osborne and Laurie A. McCann, *Forced Ranking and Age-Related Employment Discrimination*, ABA Human Rights Magazine Vol. 31 No. 2 (2004), http://www.americanbar.org/publications/human_rights_magazine_home/human_rights_vol31_2004/spring2004/hr_spring04_forced.html ................................................26

## I.     INTRODUCTION

The parties have negotiated a class action settlement of racial discrimination claims that otherwise undoubtedly would have plunged the parties into years of complex, expensive litigation with uncertain results.  This settlement fulfills the goals of the Federal Rules of Civil Procedure – to secure a "just, speedy, and inexpensive determination" – and should be preliminarily approved. The parties agreed to this Settlement after exchange of relevant information and data and more than a year of significant negotiations.

Plaintiffs allege that Lockheed Martin Corporation ("Lockheed" or "Defendant") engaged in systematic, nationwide discriminatory treatment of salaried African American employees below the level of Vice President in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq ("Title VII"). Plaintiffs claim that, from no later than January 1, 2013, Lockheed Martin has used a performance appraisal system flawed in both design and implementation that has disparately impacted the ratings of salaried African American employees below the level of Vice President, and consequently, their promotions, compensation, and retention.  Plaintiffs also claim the use of this flawed performance appraisal system reflected a pattern or practice of employment discrimination.

On its face, the proposed settlement is fair, adequate, and reasonable. It was reached after extensive bargaining in arms-length negotiations, including eleven days of in-person mediation sessions and numerous calls with a mediator. It provides for a settlement fund of $22.8 million for a class of 5,566 employees nationwide. It also creates programmatic relief that will benefit African-American employees currently employed by Lockheed Martin.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Exhaustion of Administrative Remedies and Investigation

Lockheed Martin Corporation is a leading aerospace, defense, and technology company. Its principal business areas are Rotary and Missions Systems, Enterprise Operations, Aeronautics, Missiles and Fire Control, and Space Systems. The Named Plaintiffs are current or former employees of Lockheed Martin who claim to have experienced race discrimination during their employment. Plaintiff Dr. Vernon Ross filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Lockheed, alleging race discrimination in compensation, promotion, and other terms and conditions of employment and has obtained his Right to Sue letter. Declaration of Cyrus Mehri In Support of the Joint Motion for Preliminary Approval of the Class Action Settlement ("Mehri Decl."), ¶16. Plaintiff Debra Josey also filed a charge of discrimination with the EEOC, and is in the process of obtaining her Right to Sue letter. *Id.*

The Plaintiffs engaged Class Counsel to investigate whether their claims could be pursued as a class action on behalf of all similarly situated African-American salaried employees below the level of Vice President. Class Counsel devoted significant time and resources to investigating and pursuing the Class's claims, including reviewing documentation provided by clients and other individuals and conducting independent research on Lockheed Martin.  *Id.* ¶ 26.

### B.      Settlement Negotiations and the Informal Exchange of Information

After the Plaintiffs filed their Class Charges of Discrimination, Lockheed Martin's counsel contacted Class Counsel to discuss the matter. To determine the feasibility of

settling the dispute prior to the commencement of litigation, Class Counsel and Lockheed's counsel — all of whom are experienced class action attorneys — initiated formal settlement discussions. The parties engaged in a tolling agreement covering the time period from the inception of negotiations to the date of this Action to facilitate settlement discussions. *Id*. ¶ 17.

Counsel for Defendant and Plaintiffs engaged the services of Washington, DC and JAMS Mediator Linda Singer, Esq.. Ms. Singer a highly experienced and skilled professional mediator of complex class actions, including employment discrimination matters. Ms. Singer conducted eleven days of in-person and numerous telephonic mediation sessions with the parties. During those sessions, the parties thoroughly debated the key issues, including but not limited to statistical analyses, company policies and practices, and anecdotal evidence in this case.  At least one and generally both Plaintiffs attended the in-person mediation sessions.  Class Counsel also consulted regularly with Plaintiffs about the telephonic mediation sessions and the Plaintiffs reviewed many of the drafts of a settlement agreement as discussions progressed *Id*. ¶¶ 20-24.  They made valuable suggestions based on their experiences. *Id*.

In order to evaluate the merits of the claims as to both liability and damages, Class Counsel sought and Defendant produced electronic human resource data and other information concerning the salaried African-American workforce below the level of Vice President, and its practices, including information about the performance appraisal system and ratings received by the Class during the operative time period. Class Counsel retained a labor economics expert, Dr. Alex Vekker, PhD, to conduct statistical analyses of the human resource data. Dr. Vekker reviewed the data, ensured it was complete, and, in close

consultation with Class Counsel, produced multiple analyses. Dr. Vekker conducted studies similar to those that would have been conducted in preparation for a class certification motion and a trial on this matter. *Id*. ¶ 27.

The parties devoted large portions of several days of mediation entirely to presentation and discussion of the findings of Plaintiffs' and Defendant's statistical analyses. The parties emerged from these intensive discussions well informed. *Id*.¶¶ 27-28. In addition, Class Counsel reviewed copies of numerous employment personnel policies related to the facts underlying the claims and the legal issues raised in the EEOC Charges, and completed a survey and analysis of legal and factual litigation issues pertaining to performance evaluations and relevant caselaw. Class Counsel discussed the policies with the Plaintiffs, who were familiar with those policies and the weaknesses in their formulation and application. As the negotiations and information exchange continued, Class Counsel also met with several experts in the field of industrial psychology to discuss current best practices regarding performance evaluation procedures. *Id*.¶ 26.

### C.   Resolution of Plaintiffs' Claims

As a result of the investigations and informal discovery, the parties are well positioned to evaluate the merits of the claims as well as the potential costs and risks of litigation. Counsel for both Plaintiffs and Defendant bargained vigorously on behalf of their clients during the arms-length, good-faith negotiations.

After lengthy negotiations, on December 8, 2016, counsel executed the Settlement Agreement attached to the present motion as Exhibit 1. *Id*. ¶ 29. All parties and their counsel recognize that, in the absence of an approved settlement, they would face a long litigation course, including motions to dismiss, motions related to class certification, formal

discovery, motions for summary judgment, and trial and potential appellate proceedings that would consume time and resources and present each of them with ongoing litigation risks and uncertainties. Plaintiffs faced a great deal of uncertainty due to the evolving standards for class certification in equal opportunity cases. *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482 (7th Cir.), *cert denied*, 133 S. Ct. 338 (2012); *DL v. District of Columbia*, 713 F.3d 120 (D.C. Cir. 2013).

The parties desired to avoid these risks and uncertainties, as well as the consumption of time and resources, and ultimately determined that an amicable settlement pursuant to the terms and conditions of the attached Settlement Agreement would be more beneficial to them than litigation. Class Counsel believes that the terms of the Settlement Agreement are in the best interests of the class and are fair, reasonable, and adequate, and that preliminary approval is warranted. *Id.*¶ 31.

## II.    SUMMARY OF THE SETTLEMENT AGREEMENT PROVISIONS

### A.    Settlement Class Definition

To effectuate their proposed Settlement, the parties seek provisional certification of a class defined as follows:

> [A]ll African-American salaried employees below the level of Vice President employed by Defendant in the United States for at least one day between January 1, 2013 and February 29, 2016, and who received at least one performance evaluation during that period with an overall rating below "significantly exceeded commitments."

The following employees are excluded from the Class:

> (1) employees who signed release agreements, (2) union-represented employees, (3) individuals who have asserted claims of race discrimination against Lockheed Martin, which remain pending before

any local, state or federal agency or in any state or federal court as of the date of preliminary approval, (4) individuals employed by Sandia Corporation, and (5) individuals who became (or become) employees of Lockheed Martin or one or more of its subsidiaries as a consequence of stock or asset acquisitions consummated on or after January 1, 2012 including, but not limited to, the following transactions: Industrial Defender, Materion Assets, Deposition Sciences, Astrotech AssetsZeta Associates, Sun Catalytix, Systems Made Simple, and Sikorsky.

According to Lockheed's records, 5, 566 current and former African Americans are in the Class.

### B.      Schedule for Notice and Fairness Hearing

Subject to the Court's approval, the parties have agreed upon the following schedule for the issuance of notice, the submission of opt-outs and objections, the final fairness hearing, dismissal and the distribution of the settlement fund:

a.  After preliminary approval of the Settlement Agreement, the Claims Administrator will issue the Court-approved Notice and Claim Form to Class Members by first class mail. The proposed Notice and Claim Form are attached to the Settlement Agreement as Exhibits 2 and 4;

b.  Class Member objections, if any, must be in writing, filed with the Court, and served upon counsel for the parties within forty-five (45) calendar days after the Notice is mailed to Class Members.

c.  Class Members who wish to opt-out of the settlement must submit a signed statement including the Class Member's name, address, email address and telephone number to the Claims Administrator within forty-five (45) days after the Notice is mailed to Class Members.

d.  At the approximate midpoint between the date of the first mailing of Notice and the deadline for submitting the Claim Forms, the Claims Administrator will send the Reminder Notice, a copy of which is attached as Exhibit 3, via U.S. mail to Class Members who have not yet responded reminding them of the Claim Form deadline.

e.  Class Members who wish to participate in the Settlement must return or postmark a Claim Form within seventy five (75) days after the mailing of the Notice;

f.  A briefing schedule and final approval hearing date will be set at the Court's

convenience. The parties suggest that the motion for final approval and certification of the Settlement Class be due no earlier than thirty (30) days following the close of the objection and opt-out period.

The proposed schedule is set forth in further detail in Sections 4.5, 4.6, and 9.4 of the Settlement Agreement.

### C.   Releases

All Class Members, other than the Plaintiffs, will release the Company, and all "Released Parties" as defined in Section 3.1(bb) of the Settlement, from the "Released Claims" as defined in Section 3.1(aa) of the Settlement.  Class Members who receive awards will reaffirm that release through language, attached hereto as Exhibit C, to be printed on the back of the checks.

The Named Plaintiffs must execute a written general release of any and all claims (not just claims in this case) that have accrued up to and through the date of execution, within twenty one (21) calendar days after the Settlement Agreement is executed.  The form of the expansive release to be signed by the Named Plaintiffs is attached to the Settlement Agreement as Exhibit 3.

### D.   Programmatic Relief

The Settlement Agreement requires the Company to implement programmatic relief, which will remain in place for at least four (4) years following the effective date of the Settlement Agreement. Under the Agreement, the Company will, among other things,

a. Establish a **Workforce Initiatives Council** ("Council") to:

1.  Oversee implementation of the changes that Lockheed Martin has agreed to make as a result of the Settlement Agreement, including making recommendations to modify the performance appraisal process, establish an exit interview process, and track participation in leadership development programs;

2.   Review reports that reflect Lockheed Martin's progress in ensuring fair and non-discriminatory processes related to performance management, as well as making recommendations regarding the need for follow-up action based on the data in the reports;

3.   Monitor statistical analyses required under the Settlement Agreement; and

4.   Assist in reporting to and meeting with Class Counsel in Class Counsel's role overseeing the Settlement Agreement's implementation.

b.   Implement changes to its performance appraisal process, including but not limited to:

1.   Discontinuing the use of calibration sessions and forced ranking systems;

2.   Eliminating the composite score, which represents a weighted average of an employee's ratings for commitments and behaviors;

3.   Considering revisions to the performance management tool;

4.   Investigating and proposing modifications to the performance ratings appeal process to ensure that employees have the opportunity to obtain meaningful review of their performance evaluations; and

5.   Reviewing performance evaluation data to analyze the data for disparities in the performance ratings received by African American salaried employees; and, before year-end ratings are provided to employees, to take efforts to reduce and eliminate statistically significant disparities.

c.   Undertake a salary analysis relating to the compensation paid to African American employees and make adjustments to compensation, as reasonable and appropriate;

d.   Implement a process to ensure that a diverse slate of viable candidates is being considered for open salaried exempt positions at grade 7 and below prior to filling the positions. The Council shall receive and review data on the results of the selection process and suggest means for improving and enhancing the process;

e.   At the request of the Council, each Business Area shall develop a growth promotion plan that addresses the timing of growth promotion decisions and includes a proposal for analyzing the distribution of growth promotions for which African American salaried employees are eligible;

f.   The Council shall investigate options or conducting exit interviews and surveys of employees who voluntarily resign their employment with the Company and recommend a process for conducting such interviews and tracking the feedback

received. The Council will receive a summary of the results of exit interview data and any recommendations regarding the same at least once a year;

g.  The Council will consider and recommend mechanisms to link performance in the area of diversity and inclusion to executive compensation;

h.  Provide training in areas impacting the Company's diversity and inclusion, including continued Effective Leadership of Inclusive Teams (ELOIT) learning opportunities; instruction for leaders and employees on conducting performance evaluations and providing performance feedback as well as the appeal process; and training for leaders responsible for employee evaluations and/or selections with curriculum focused on how to evaluate employees and make decisions regarding selection and compensation effectively and fairly without unlawful bias.

i.  The Council shall investigate options to monitor the demographics of those who participate in Leadership Development Programs and track participants' career progression following participation in such programs.

j.  Develop, or continue where a system is currently in place, a system of tracking personnel data to ensure that information for African American salaried employees can be provided to the Council on a semi-annual basis. Based on the following data, the Council shall pay particular attention to any statistically significant disparities affecting salaried African American employees and shall make recommendations regarding any need for further investigation, follow-up action, or changes to existing policies and practices affecting:

    1.  Performance rating distributions;

    2.  Growth promotions;

    3.  Participation in training programs;

    4.  Attrition information.

k.  **Board of Directors**: Twice a year, the Chair of the Council and/or the Vice President of Global Diversity and Inclusion shall provide a report to the Board of Directors and/or the appropriate Committee of the Board of Directors that addresses the efforts of the Council to carry out this Settlement Agreement.

l.  **Class Counsel Oversight:** Report to Class Counsel on Lockheed Martin's progress in implementing the actions described above, as well as meet with Class Counsel and provide to Class Counsel data reports on performance rating distributions, growth promotions, attrition information, salary analyses, and participation in training programs of African American salaried employees in comparison to similarly situated white employees.

9

The full terms of the programmatic relief are set forth in Section 8 of the Settlement Agreement, and their important and groundbreaking nature is described in Section VII(C) infra.

      **E.**      **The Settlement Fund**

      Defendant will pay $100,000 into a Settlement Fund after preliminary approval of the Settlement Agreement, and pay the balance, $22.7 million, into the Fund after the final approval hearing on the Settlement Agreement. The initial payment will be used to cover notice and fund administration costs incurred before final approval.  The Fund will cover:

a.  All amounts to be paid to Class Members, including Named Plaintiffs;

b.  All of Class Counsel's fees and costs, including those in connection with securing court approval of the Settlement, the claims process, and the oversight of the Settlement Agreement;

c.  Costs in connection with the Fund including, but not limited to, those related to notice, claims processing, legal advice and tax reporting of awards to claimants, preparation of tax returns, and the Claims Administrator's fees and expenses; and

d.  All applicable federal, state and local income taxes and the employee's portion of applicable payroll taxes.

The Fund does not include Defendant's share of taxes or contributions (i.e., FUTA, SUTA, FICA, and Medicare), which Defendant will pay separately to the Claims Administrator. If the number of Class Members who opt out of the Settlement equals or exceeds the number set forth in Appendix 1 filed with the Court under seal concurrently with this Settlement Agreement, the Defendant may withdraw from the Settlement Agreement or take an opt out credit equal to $4,000 per Class Member who elects to opt out. Full details of the Settlement Fund are set forth in Sections 4.6(c) and 9.2(d) of the Settlement Agreement.

Garden City Group, LLC in Seattle, Washington will serve as the Claims Administrator and the Trustee of the Settlement Fund with respect to the handling, management, and distribution of the Fund. Loree Kovach, who is a Director of Operations at Garden City Group, is the primary Garden City Group employee overseeing the administration of the case. Ms. Kovach has been with GCG for two years. Prior to that, she worked for ten years at Settlement Services, Inc. ("SSI"), a settlement administration company which specializes in employment class action settlements. Ms. Kovach worked at SSI when GCG acquired SSI. Courts in this District have previously found the Notice and Claims processing methods used by Garden City Group and SSI to be adequate. *See Brown et al v. Medicis Pharmaceutical Corporation,* No. 1:13-cv-1345 (ECF 52)(D.D.C. July 11, 2016)(GCG used as Claims Administrator); *In Re Fannie Mae Securities Litigation*, 4 F. Supp. 3d 94, 101 (D.D.C. Dec. 6, 2013); *Carter v. Wells Fargo Advisors, LLC*, No. 1:09-CV-01752 (D.D.C. June 9, 2011) (SSI used as Claims Administrator); *Augst-Johnson v. Morgan Stanley & Co.*, No. 1:06-CV-01142 (D.D.C. Oct. 26, 2007)(same).

## F.   **Attorneys' Fees and Expenses**

Pursuant to the Agreement, Class Counsel may petition the Court for attorneys' fees of up to 28% of the proposed $22.8 million monetary settlement plus reimbursement of out of pocket expenses

The Agreement also permits Class Counsel to receive an additional payment of $225,000 per year for four years to reimburse them for their oversight duties after final approval of the Settlement. Under the terms of the Settlement, Class Counsel will review Lockheed Martin's reporting on programmatic modifications and data and metrics; meet

with the Chair of Lockheed Martin's Workforce Council three times during the first year of the Settlement Agreement and on a semi-annual basis thereafter to evaluate and review Lockheed Martin's progress on the objectives of the Settlement Agreement; give feedback to the Company; and take appropriate action, beginning with discussions with the Company, if Class Counsel identifies issues of non-compliance with the Settlement. Class Counsel's oversight role is detailed fully in Section 8.8 of the Settlement Agreement.

### G.   Confidentiality

The content of the responses on the Claim Forms will be kept confidential. The identities of the Claimants will not be disclosed to anyone other than counsel for the parties, the Claims Administrator, and the employees of Lockheed Martin who have a strict business need to know. They will be disclosed to the Court only if required, and *in camera*. The purpose of these confidentiality provisions is to encourage Claimants to be forthcoming on their Claim Forms.

## VI.   THE COURT SHOULD CONDITIONALLY CERTIFY THE PROPOSED SETTLEMENT CLASS

The Court should grant preliminary approval, and ultimately final approval, to the proposed Settlement under the standards developed for settling a proposed class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and applicable case law.  Rule 23 applies to the settlement of any case raising class allegations, even prior to class certification. *See* 5-23 Moore's Federal Practice §23.80[2-1]. Conditional settlement approval, class certification, and appointment of class counsel have practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring that all class members are notified of the terms of the proposed settlement, and setting the date and time of the final approval hearing. *See* Fed. R. Civ. P. 23(e).

In determining whether to grant a motion for preliminary approval of a proposed settlement agreement, the Court utilizes a threshold inquiry standard intended merely to reveal conspicuous defects. *Manual for Complex Litigation* (Fourth) § 21.632 (2004). The proposed Settlement Class in this case does not suffer from any conspicuous defects. It satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation and at least one of the subsections of Rule 23(b) to the extent required for purposes of certifying a settlement class.

A.    **The Proposed Settlement Class Satisfies Rule 23(a)**

Under Rule 23(a) of the Federal Rules of Civil Procedure, a class may be certified when "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The Class meets each of these requirements.

1. **The Class Is So Numerous that Joinder of All Members Is Impracticable**

Courts generally agree that classes with forty or more members satisfy the numerosity requirement. *See Thorpe v. D.C.*, 303 F.R.D. 120, 144 (D.D.C. 2014); *Moore v. Napolitano*, 926 F. Supp. 2d 8, 27 (D.D.C. 2013). Based on its data, the Company has identified 5, 566 Class Members. Therefore, the proposed number of Class members far exceeds the minimum number to satisfy the numerosity requirement.

2. **Questions of Law and Fact Are Common to the Class**

Commonality requires that the claims in a case raise questions of law or fact common to the class, but does not require that every issue of law or fact be identical with

13

respect to each class member. *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007). Not all questions need to be common to the class — "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). In general, the commonality requirement is satisfied where there is at least one issue which, if resolved, affects all or a significant number of class members. *DL v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013).

The Class satisfies the commonality requirement here because Plaintiffs allege that each member of the Class was subject to the same performance evaluation system at Lockheed Martin. Plaintiffs allege that, during the relevant years, Lockheed Martin has evaluated all non-represented, salaried employees under essentially the same performance appraisal system, and has used this system to select employees for annual pay increases, as well as certain bonuses and incentive awards. It is alleged that the system has also affected promotion and retention of employees. The discrimination in pay, promotions, and retention experienced by each member of the proposed Class is bound together by the common, unifying system that produced the unlawful disparities complained of. *See, e.g., In re District of Columbia*, 792 F.3d 96, 100 (D.C. Cir. 2015) (commonality requirement was satisfied when "plaintiffs will have to prove concrete systemic deficiencies"); *In re Johnson*, 760 F.3d 66, 72-73 (D.C. Cir. 2014) (class of African American employees achieved class certification in part because "every class member was evaluated upon the same criteria and scored using the same numerical system").

Questions that are common across the Class allegations include, but are not limited to: (1) Has the performance evaluation system been properly validated as required by law? (2) Did African-American salaried employees systematically receive lower ratings than

their white peers under Lockheed Martin's performance appraisal system? (3) Has the performance appraisal system been flawed in manners that have resulted in the lower ratings for Class members? (4) Have there been systemic disparities in the merit compensation of African American employees resulting from disparities in performance appraisal ratings? (5) Have Class members received fewer and/or lower bonuses as a result of lower ratings? (6) Have there been statistically significant disparities in promotion rates of African American employees resulting from disparities in performance appraisal ratings? (7) Have there been statistically significant systemic disparities in retention rates of African American employees resulting from disparities in performance appraisal ratings? The resolution of these common issues would impact the class of African American salaried employees as a whole.

### 3.   The Named Plaintiffs' Claims Are Typical of the Class Claims

Named Plaintiffs' claims "are typical of those of the class if the named plaintiffs' injuries arise from the same course of conduct that gives rise to the other class members' claims." *Moore*, 926 F. Supp. 2d at 30. "Typical does not mean identical," *id.*, and thus "[a] plaintiff's claims can be typical of those of the class even if there is some factual variation between them." *Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 9 (D.D.C. 2010). "Typicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff." *Cohen v. Warner Chilcott Pub. Co.*, 522 F. Supp. 2d 105, 115 (D.D.C. 2007) (internal citations omitted). Courts have liberally construed the typicality requirement. *See, e.g., In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 259 (D.D.C. 2002).

The Named Plaintiffs' claims are typical of the claims of the Class because all the claims in this suit arise from Lockheed Martin's allegedly discriminatory performance appraisal system. The Named Plaintiffs and the Class allege that the performance appraisal system in use at Lockheed Martin contained flaws that resulted in lower ratings for African American employees and, consequently, lower compensation, fewer promotions, and lower retention rates of African Americans. Finally, Named Plaintiffs and the Class's claims all rest on common evidence and are all based on common legal theories of liability and recovery. The Named Plaintiffs satisfy the typicality requirement.

### 4. The Named Plaintiffs and Class Counsel are Adequate Representatives

"Two criteria for determining the adequacy of representation are generally recognized: 1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and 2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Moore*, 926 F. Supp. 2d at 31 (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575-6 (D.C. Cir. 1997)); *see also Anchem Prods. v. Windsor*, 521 U.S. 591, 625-27 (1997).

Class Counsel have vigorously represented the interests of the Class during negotiations. Throughout these negotiations, Class Counsel have relied on their expertise in litigating major class actions in the field of employment discrimination. Lawyers at Mehri & Skalet have served as lead or co-lead class counsel for plaintiff classes in litigating employment discrimination class cases and achieving settlements affording significant monetary and programmatic relief on behalf of class members. *See Brown v. Medicis Pharmaceutical Corp.*, No. 1:13-cv-01345 (D.D.C. July 11, 2016) (Leon, J.)($7.15 million settlement and similar injunctive relief and certifying Mehri & Skalet as Class Counsel);

*Carter v. Wells Fargo Advisors, LLC*, No. 1:09-CV-01752-CKK (D.D.C. 2011) (Kollar-Kotelly, J.) ($32 million settlement and similar injunctive relief and certifying Mehri & Skalet as class counsel); *Amochaev v. Citigroup Global Markets d/b/a Smith Barney*, No. 3:05-cv-01298-PJH (N.D. Cal. 2008) ($33 million settlement and similar injunctive relief and certifying Mehri & Skalet as Class Counsel)(recently referred to Kollar-Kotelly, J.); *Augst-Johnson v. Morgan Stanley & Co.*, No. 1:06-CV-01142 (D.D.C. 2007) (recently referred to Kollar-Kotelly, J.) ($46 million settlement and programmatic relief on behalf of female financial advisors and certifying Mehri & Skalet as Class Counsel); *Robinson v. Ford Motor Co.*, No. 1:04-CV-00844, 2005 U.S. Dist. LEXIS 11673 (S.D. Ohio 2005) (settled for $10 million and creation of over 270 apprenticeship positions for African Americans and certified Mehri & Skalet as Class Counsel); *Ingram v. Coca-Cola Company*, No. 1:98-CV-3679, 200 F.R.D. 685 (N.D. Ga. 2000) (settled for $192 million and broad programmatic relief on behalf of salaried African-American employees); *Thornton v. Nat'l R.R. Passenger  Corp.*, No. 1:98-cv-890 (D.D.C. 2000) (Sullivan, J.) ($16 million plus broad injunctive relief in race discrimination class action); *McLaurin v. Nat'l R.R. Passenger Corp,* 1:98-cv-2019 (D.D.C. 2000) (Sullivan, J.) ($8 million plus broad injunctive relief in race discrimination class action); *Hyman v. First Union Corp.*, No. 94-1043 (D.D.C. 1997) (Lamberth, J.) ($58.5 million in age discrimination collective action); *In re PEPCO Employment Litig.*, No. 86-0603, 1993 U.S. Dist. LEXIS 7905 (D.D.C. 1993) (Lamberth, J.) ($38.4 million and broad injunctive relief). *Roberts v. Texaco Inc.*, 94 Civ. 2015 (CLB) (S.D.N.Y. 1997) (settled for $176 million and broad programmatic relief on behalf of African-American employees). Mehri Decl. ¶¶ 5-9.

Proposed co-lead Class Counsel Charlie Firth has primarily devoted his practice to employment litigation on behalf of plaintiffs. He has been involved in representing employees in a number of race and gender discrimination cases including D*ukes v. Wal-Mart* prior to its appeal to the Supreme Court, as well as wage and hour class and collective actions. Mr. Firth has experience in litigating, mediating, and settling employment class actions. *Id.*¶ 10.

Named Plaintiffs will also fairly and adequately represent and protect the interests of the Class. Named Plaintiffs' allegations are the same as those of the Class with respect to race discrimination in employment, including the performance appraisal system leading to lesser compensation, fewer promotions, and less retention of African American employees. There is little potential for conflicting interests. Further, both the Named Plaintiffs, especially Debra Josey who remains an employee of Lockheed Martin, have great interest in ensuring that the Programmatic Relief provisions of the Settlement Agreement are effective. *Id.*¶ 23. The Named Plaintiffs have devoted significant time and energy to pursuing the Class claims, including traveling to attend mediation sessions, providing information to Class Counsel, and reviewing multiple versions of Settlement documents, and will continue to represent the Settlement Class with distinction. *Id.*¶¶ 23-24. As such, Named Plaintiffs are adequate representatives for the Class.

### B.      The Proposed Settlement Class Satisfies Rule 23(b)

The Class satisfies the provisions of Rule 23(b) to the extent required for a settlement class and can be certified as a "hybrid" class under Rule 23(b)(2) and (b)(3). *See Eubanks v. Billington*, 110 F.3d 87, 96 (D.C. Cir. 1997) (permitting district court to adopt a "hybrid" approach, certifying a (b)(2) class as to the claims for declaratory or injunctive

18

relief, and a (b)(3) class as to the claims for monetary relief, effectively granting (b)(3) protections including the right to opt out to class members at the monetary relief stage); *see also DL v. District of Columbia*, 302 F.R.D. 1, 10 n. 2 (D. D. C. 2013), *petition to appeal denied by DL v. District of Columbia*, No. 13-cv-8009, 2014 U.S. App. LEXIS 1919 (D.C. Cir. 2013) ("[t]here is no question that certification of hybrid classes is permitted under Rule 23").

### 1. Certification Is Appropriate Under Rule 23(b)(2) as to Injunctive Relief

Rule 23(b)(2) requires that a defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of Rule 23(b)(2) classes. *Anchem*, 521 U.S. at 614 (1997).

The Class members here have been subjected to the same allegedly discriminatory policies and practices centered on Lockheed Martin's flawed performance appraisal system. All members of the proposed Settlement Class have been subjected to the performance appraisal system at least once during the relevant period. This performance appraisal system affected the compensation, promotion, and retention of the entire Class. Thus, injunctive relief is appropriate with respect to the Class as a whole to secure changes in Lockheed Martin's personnel policies, including but not limited to its performance appraisal system. The Class should be approved under Rule 23(b)(2) as to injunctive relief.

### 2. Certification Is Appropriate Under Rule 23(b)(3) as to Monetary Relief

A class action is properly maintained pursuant to Rule 23(b)(3) if "the court finds that questions of law or fact common to class members predominate over any questions

19

affecting only individual members," Fed. R. Civ. P. 23(b)(3), and that the class action is the superior method of adjudicating the controversy. *See Moore*, 926 F. Supp. 2d at 33 (certifying a class of African American employees and holding that common issues predominated where the class alleged that a promotion process discriminated against African Americans, which would be established by common statistical proof among other methods). The predominance requirement

> does not simply require a mathematical accounting of whether common or individualized questions are more *numerous*. Instead, it requires a qualitative assessment . . . it is not bean counting . . . If the most substantial issues in controversy will be resolved by reliance primarily upon common proof, class certification will generally achieve the economies of litigation that Rule 23(b)(3) envisions.

*In re Air Cargo Shipping Servs. Antitrust Litig.*, Master File No. 06-MD-1175 (JG)(VVP), 2014 U.S. Dist. LEXIS 180914, at *193-194 (E.D.N.Y. Oct. 15, 2014) (quotation deleted).

The common questions of law and fact affecting the Settlement Class itemized above — Has Lockheed Martin's performance appraisal system been validated as required by law? Has the performance appraisal system had an adverse impact on performance ratings of African American salaried employees? Has the performance appraisal system been flawed in a way that resulted in discrimination against Class members? Have there been disparities in the merit compensation, promotion and retention rates of African American employees resulting from disparities in performance appraisal ratings? — are the most substantial questions in controversy as to Class members' race discrimination claims. The Class members are united by common factual allegations — that Class members were subjected to discriminatory compensation and promotion decisions as well as lower retention rates resulting from the same performance appraisal system — as well

as a common legal theory — that these policies violated Title VII and Section 1981. The common issues predominate over any issues affecting only individual Class members.

Because the parties have proposed a settlement of the class issues, this is a fair and efficient way of proceeding to resolve this dispute, and the Court does not need to address the manageability of the proposed class claims. *See Anchem*, 521 U.S. at 620 (any possible difficulties in managing a class action are not an issue given that the parties have agreed to a settlement).

## VII. THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT

### A. Standard for Approval of a Class Settlement

Fed. R. Civ. P. 23(e) governs approval of a class action settlement.  Rule 23(e) provides, in relevant part, that:

> The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval.   The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

Fed. R. Civ. P. 23(e). Preliminary approval of a proposed class action settlement "lies within the sound discretion of the court." *Richardson v. L'Oreal USA, Inc.*, No. 13-508 (JDB), 2013 U.S. Dist. LEXIS 90378, at *5 (D.D.C. June 27, 2013). Courts should be guided by two principles when examining a proposed settlement at the preliminary approval stage. First, courts favor compromise of complex litigation to obviate the

uncertainties of the outcome and to avoid wasteful litigation and expense. *See, e.g.*, *United States v. MTU Am. Inc.,* 105 F. Supp. 3d 60, 62-63 (D.D.C. 2015) ("[s]ettlement is highly favored, as not only the parties, but the general public as well, benefit from the saving of time and money that results . . .") (internal quotation omitted). Second, a court should leave considerable discretion to the litigants and their counsel. *Alvarez v. Keystone Plus Constr. Corp.,* 303 F.R.D. 152, 160 (D.D.C. 2014); *United States v. District of Columbia*, 933 F. Supp. 42, 46-47 (D.D.C. 1996) ("[T]he function of the reviewing court is not to substitute its judgment for that of the parties to the decree, but to assure itself that the terms of the decree are fair and adequate and are not unlawful, unreasonable, or against public policy.")

Courts typically take two steps in approving a settlement. First, at a preliminary hearing, the Court determines whether the proposed settlement is "within the range of possible approval." *Armstrong v. Bd. Of Sch. Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980) (internal citations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1988); *see also Winingear v. City of Norfolk*, No. 2:12-cv-560, 2014 U.S. Dist. LEXIS 97392 at *10 (E.D. Va. 2014). In that preliminary hearing, the Court ascertains whether to notify the class of the proposed settlement and to proceed with a fairness hearing. *Armstrong,* 616 F.2d at 314. (citing Manual for Complex Litigation (First), § 1.46, at 53-55)).

After the preliminary approval hearing, the Court directs counsel to issue notice to all class members and schedules a fairness hearing where all interested parties, including all class members, are afforded the opportunity to comment in writing or orally on the proposed settlement. *In Re Fannie Mae Securities Litigation*, 4 F. Supp. 3d 94, 101 (D.D.C. 2013). During the final fairness hearing, the Court determines whether the proposed

settlement is "fair, reasonable, and adequate and is not a product of collusion between the parties" as required by Fed. R. Civ. P. 23(e). *Id.* at 100 (D.D.C. 2013) (internal quotation omitted).

Three primary questions are to be examined when considering whether to grant preliminary approval of a settlement: (1) whether the proposed settlement appears to be "the product of serious, informed, non-collusive negotiations;" (2) whether it falls within the range of possible judicial approval; and (3) whether it has any obvious deficiencies, such as granting unduly preferential treatment. *Richardson*, 2013 U.S. Dist. LEXIS 90378 at *5 (internal citations omitted).

Unless the Court's initial examination "disclose[s] grounds to doubt its fairness or other obvious deficiencies," the Court should order that notice of a formal fairness hearing be given to class members under Rule 23(e). *Manual for Complex Litigation (Third)* § 30.41 (1995). At the preliminary approval stage, the Court should determine whether it is reasonable to believe that the agreement may be fair, reasonable and adequate, while deferring a final determination until notice is effected and comments and objections may be considered. *Manual Fourth* § 21.632.

### B. <u>The Settlement is the Product of Serious, Informed, Non-Collusive Negotiations</u>

Settlements reached as a result of arm's length negotiations are presumed to be fair and reasonable. *In Re Fannie Mae Securities Litigation*, 4 F.Supp.3d at 102 (finally approving class action settlement that was "the product of extensive and vigorous arm's-length bargaining"); *Carter v. Wells Fargo Advisors, LLC,* No. 09-1752 (CKK) at 4-5 (D.D.C. June 9, 2011) (finally approving class action settlement that was "negotiated at

arm's length with the assistance of an experienced, professional mediator"); *Augst-Johnson v. Morgan Stanley & Co.*, No. 06-1142, (D.D.C. Oct. 26, 2007) (certifying class and finally approving class action settlement on behalf of female financial advisors); *see also Newberg on Class Actions* § 11.41 at 11-88 (3d ed. 1992).

In this case, the Settlement Agreement is the result of arm's length negotiations, including vigorously contested discussions regarding statistical analysis, policy, and legal issues that were overseen by an experienced and respected JAMS mediator, Linda Singer. Mehri Decl. ¶¶18, 20-22. Counsel for the parties initiated negotiations with a two-day mediation and, over the following eight months, convened an additional nine in-person mediation sessions in Washington, D.C. Throughout the negotiations, Class Counsel worked with Named Plaintiffs to identify the claims in the case and further refine the issues to be settled on behalf of a nationwide class. *Id.*¶¶ 21. The Named Plaintiffs participated in the mediation sessions in person or via teleconference, and provided valuable input into the substantive terms of the Settlement, including the Programmatic Relief ultimately agreed upon by the parties. In addition to the eleven days of formal in-person mediation sessions, the parties' counsel and Ms. Singer engaged in numerous telephone and email communications. The parties called upon Ms. Singer frequently to assist in resolving highly contested points, and the Settlement Agreement was executed only after protracted arms-length bargaining. *Id.*¶¶ 21-29.

### C.  The Settlement Falls Within the Range of Possible Judicial Approval

In evaluating whether a settlement falls within the range of possible judicial approval (the second factor to consider at the preliminary approval stage), "by far the most important factor is a comparison of the terms of the  . . . settlement with the likely recovery

that the Plaintiffs would realize if the case went to trial." *Blackman v. District of Columbia*, 454 F. Supp. 2d 1, 13 (D.D.C. 2006); *see Greenberg v. Colvin*, No. 13-cv-1837, 2015 U.S. Dist. LEXIS 85478 at *11 (D. D. C. July 1, 2015).

This Settlement is likely more favorable than the relief the Class would have achieved through trial. As set forth above in detail, this Settlement implements comprehensive, valuable programmatic relief to the entire Class.

The changes required by the Settlement address a critical problem — alleged flaws in the performance appraisal system. Performance evaluation systems have been scrutinized due to the negative impact that they can have on minority and other employees when they do not contain safeguards insulating them from bias. For example, the forced ranking aspect of some performance evaluation systems — an aspect employed by Lockheed Martin prior to the Settlement — have spurred discrimination lawsuits. *See, e.g.*, *Moussouris, et al., v. Microsoft Corp.*, C15-1483JLR, (W. D. Wa. Oct. 14, 2016); Tom Osborne and Laurie A. McCann, *Forced Ranking and Age-Related Employment Discrimination*, ABA Human Rights Magazine Vol. 31 No. 2 (2004), http://www.americanbar.org/publications/human_rights_magazine_home/human_rights_ vol31_2004/spring2004/hr_spring04_forced.html; Malos, *The Importance of Valid Selection and Performance Appraisal: Do Management Practices Figure in Case Law?*, Employment Discrimination Litigation 383 (2004); Meredith L. Myers, *Grades Are No Longer Just For Students: Forced Ranking, Discrimination, and the Quest to Attain a More Competent Workforce*, 33 Seton Hall L. Rev. 681, 691 n. 82 (2003). The effects of the changes to Lockheed's performance appraisal system are especially significant because their implementation will touch tens of thousands of Lockheed Martin employees

nationwide Lockheed Martin uses the same performance evaluation system to evaluate all salaried employees; thus, the changes to this system will benefit all current employees, not just Settlement Class Members.

Many other aspects of this Settlement, aside from just the changes to the performance appraisal system, are groundbreaking. Mehri Decl. ¶ 42. For example, the Board of Directors' receipt of information regarding implementation of the Settlement, and by extension its evaluation of equal employment opportunity issues writ large, is particularly noteworthy. *Id.* Under the Settlement Agreement, the Board of Directors will receive a twice-yearly report including trends on African-American salaried employees regarding performance rating distributions, compensation and salary information, growth promotions, attrition information, and any other information the Workforce Council created by the Settlement deems to be useful. While other race discrimination settlements, *see, e.g.*, *Abdallah, et. al. v. Coca-Cola Company*, No. 1:98-CV-3679 (N.D. Ga. 2000), provided for the Board's oversight of the company's overall equal employment opportunity performance, the specific and targeted reporting to Lockheed Martin's Board of Directors will keep equal employment opportunity issues as one of the Board's many priorities. *Id.*

Other changes set forth in the Settlement, such as the requirement that a diverse set of candidates be considered for salaried positions at grade 7 and below, will benefit African American employees as well as African American candidates for employment. While Class Counsel will oversee the implementation of these changes for the negotiated term of four years, Class Counsel expects the positive effects of these changes to stretch well beyond that time frame. Mehri Decl. ¶ 44.

The Settlement also allows Class Members who have been injured by the flaws in

the performance appraisal system to confidentially receive monetary relief. The common fund created by the settlement is $22.8 million for a class of 5,566 individuals, but the total value of the settlement is significantly more. First, Lockheed must pay its share of the payroll taxes on the awards to Claimants from the fund. Second, Lockheed agreed to perform a salary analysis relating to Class members' compensation and make appropriate adjustments to compensation within one year of the Court's final settlement approval, and thereafter every other year. Based on Class Counsel's experience, Class Counsel believes this could result in substantial additional compensation to Class Members over the years, and is a valuable and unique feature of this Settlement. Mehri Decl. ¶ 45.

The portion of the settlement fund covering economic damages and loss will be distributed pursuant to criteria enumerated in the Notice and Claim Forms. The criteria will include the number of weeks worked for Lockheed Martin during the class period; information regarding claimants' performance ratings; the extent to which claimants received salary bonuses, awards, and promotions during the class period; whether claimants' employment was involuntarily terminated under circumstances in which performance evaluations may have contributed; the extent of the claims the employees are releasing; and the employees' contributions to the prosecution of the action, if any. S.A. § 9.5(b). If this case went to trial and judgment, the relative amounts received by Class members would likely roughly approximate the allocations to individual Class Members under this type of formula.

### D. The Settlement Is Fair in its Provisions Concerning Notice to Class Members and Allocation of Benefits Among Plaintiffs and Class Members and Does Not Have Any Glaring Deficiencies

The final factor to consider at the preliminary approval stage is whether the

27

Settlement has any obvious deficiencies, such as granting unfairly preferential treatment. A settlement agreement is fair when it provides adequate notice to class members so that each class member can make an informed choice about whether to opt out, object, and/or file a timely claim form and have an opportunity to receive a monetary award. A fair settlement also should allocate the benefits of the settlement fairly among all class members, including named plaintiffs. *See, e.g., In re Fannie Mae Sec., Derivative, and ERISA Litig.*, 4 F. Supp. 3d at 107. The Settlement Agreement here meets these criteria.

### 1.  The Proposed Form and Method of Notice is Adequate

The parties' proposed form of notice satisfies Rule 23(e)'s requirements that class members are adequately informed about the terms of the settlement and given an opportunity to comment on or object to a proposed settlement of a class action.

The Notice, attached to the Settlement Agreement as Exhibit 4, which will be sent by first class mail to each Class member, provides a detailed summary of the terms of the Settlement Agreement, including the proposed procedures for distribution of awards. It also provides clear guidance to Class members on the procedure and deadline for filing objections, the procedures for opting out, and the manner of submitting claim forms.

The Claim Form, which will be sent with the Notice and is attached to the Settlement Agreement as Exhibit 2, contains specific instructions for its timely completion and submission. The Claims Administrator will print a Data Report accompanying the Claim Form that is pre-populated with each Class Member's identifying information, the dates that he or she was employed with Lockheed Martin, the Class Member's job titles and levels during that time period, the promotions he or she received, the compensation, including salary, bonuses, and incentive awards for each year during the class period, and

the reason code for any termination of employment with the Company. The Claim Form and the Notice alert Class members that they may challenge any pre-printed data they believe to be incorrect when they submit their forms. In addition, the Claim Form and Notice provide the contact information of Class Counsel and the Claims Administrator, both of whom will be available to answer questions about the Claim Form process.

The proposed plan for delivery of the Notice and Claim Form satisfies the requirements of Rule 23. The Notice will be mailed by first class mail to each Class Member after the Court grants preliminary approval to the Settlement. If any envelopes are returned with forwarding addresses, the Claims Administrator will re-mail the Notice and Claim Form to the new addresses. In the event that any envelopes are marked as "Return to Sender," the Claims Administrator will perform a standard skip trace to ascertain the current address of the particular Class Member in question. If no updated address is obtained, the Claims Administrator will request additional information in writing from Lockheed Martin, which shall provide that information in an encrypted file, and separately provide the password to the file. The Claims Administrator will use this information to search for a current address for the Class Member, and re-send the Notice and Claim Form to the Class Member.

The Claims Administrator will send the Reminder Notice, attached to the Settlement Agreement as Exhibit 5, as a postcard to each Class Member who has not submitted a Claim Form at the approximate midpoint between the date of the first mailing of Notice and the deadline for submitting Claim Forms. The Reminder Notice will remind Class Members of the deadline for submitting the Forms. The full details of the notice process are provided in Sections 4.5 and 9.4 of the Settlement Agreement.

### 2. Monetary Benefits of the Settlement Will be Fairly Distributed Among Named Plaintiffs and Class Members

The Settlement Agreement provides each of the 5,566 Class Members with an opportunity to receive monetary relief. Each individual, including Named Plaintiffs, will go through the same claims process and receive the amount of money determined by a neutral third party — the Claims Administrator — using predetermined, uniformly-applied criteria. The Claims Administrator will devise for this lawsuit a point system for allocating the Settlement Fund based on the Data Report and information Claimants provide on Claim Forms. The Settlement Agreement also calls for the Claims Administrator to consider that Named Plaintiffs devoted significant time and energy into initiating and negotiating the Settlement, the risk they took in pursing claims and will execute a general release of claims. The Claims Administrator's point system will be submitted for the Court's approval at the final approval stage.  To ensure transparency, Class Members are apprised in the Notice that Named Plaintiffs will be allocated additional points for their efforts and the risk they took in pursuing a claim, and general releases. The criteria and process for distribution of the Settlement Fund is fair, transparent, will be approved by the Court, and accounts for the unique circumstances and efforts of the Named Plaintiffs.

### 3. The Fees and Expenses That Will Be Requested are Within the Range of Possible Judicial Approval

The fee award that Class Counsel will request at Final Approval is fair, adequate, and reasonable. The Settlement Agreement provides that Class Counsel may petition the Court for reimbursement of out of pocket expenses, which are expected to be approximately $125,000, plus attorneys' fees in the amount of 28% of the proposed $22.8 million settlement.

In a common fund case such as this one, "a party who creates, preserves, or increases the value of a fund in which others have an ownership interest [is] reimbursed from that fund for litigation expenses incurred, including counsel fees." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993). D.C. federal courts have "conclud[ed] that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fee award." *In Re Fannie Mae Securities Litigation*, 4. F. Supp. 3d 94, 110 (D.D.C. 2013). "In the common fund context, the percentage of recovery method does a better job of guarding against potential abuses than the lodestar method." *Hubbard v. Donahoe*, 958 F. Supp. 2d 116, 124 (D.D.C. 2013). Using the percentage of the fund method, the Court considers the appropriate percentage to be awarded under the case law of this jurisdiction and under the facts and circumstances of this case.

Class Counsel's requested fee of 28% of the common fund (not including a fee and expense award to cover future work in the case) is at the low end of the typical 30-37.5% range for employment discrimination class actions in this district. *See, e.g.*, *Brown v. Medicis Pharmaceutical Corp.*, No. 1:13-cv-01345 (D.D.C. July 11, 2016)(35% for fees and expenses); *McReynolds v. Sodexho Marriott Servs., Inc.*, No. 1:01-CV-00510 (ESH) (D.D.C. July 26, 2006) (30.1% for fees and expenses); *Bynum v. District of Columbia*, 412 F.Supp.2d 73, 81 (D.D.C. 2006) (33.3% of  Class Fund plus costs), *Kosen v. American Express Financial Advisers, Inc.*, No. 1:02CV00082 (HHK) at 12 (D.D.C. June 16, 2002) (35% for fees and expenses); *Thornton v. National Railroad Passenger corp.*, No. 1-98-cv-890 (EGS)(D.D.C. 1998) (ECF 62) (37.5% for past and future fees and expenses); *McLaurin v. National Railroad Passenger Corp*, 1:98-cv-2019 (EGS)(D.D.C. 2004)(ECF 30) (37.5% for past and future fees and expenses). This 30-37.5% range of fees set by

jurists in this District recognizes the difficulty and importance of equal employment opportunity class actions.

The fee request does not include any compensation to Class Counsel for the likely substantial economic benefit from Section 8.5(b) of the Settlement agreement calling for a salary analysis and adjustment, as appropriate, every other year. Mehri Decl. ¶ 54. The fee request of 28% also rewards Class Counsel for their efficient work, which included lean staffing of the case and well-managed teams of attorneys and support staff, while representing their clients zealously at each stage of the negotiations. *See* Mehri Decl. ¶ 53.

In addition to the 28% of the Settlement Fund to compensate Class Counsel for work completed prior to final approval of the Settlement, Class Counsel will also request that the Court award payments for their duties after the Settlement Agreement is finally approved. The Settlement Agreement provides for an active and effective role for Mehri & Skalet in overseeing the Settlement for four years after its execution. Mehri Decl. ¶ 43. Under the Settlement Agreement, Mehri & Skalet has the obligation to review Lockheed Martin's reporting on programmatic modifications and data and metrics; meet with the Chair of Lockheed Martin's Workforce Council three times during the first year of the Settlement Agreement and on a semi-annual basis thereafter to evaluate and review Lockheed Martin's progress on the objectives of the Settlement Agreement; and give feedback to Lockheed Martin on the information provided to it. The Settlement also gives Mehri & Skalet the ability to discuss with Lockheed Martin and otherwise take appropriate action if Mehri & Skalet identifies issues of non-compliance with the Settlement Agreement. In order to cover the fees and expenses associated with Mehri & Skalet's oversight work, Class Counsel will also request the Court to award from the settlement

fund additional payments of $225,000 plus interest, if any, during each of the four years of the term of the Settlement.

## VI.     CONCLUSION

Because the Settlement Agreement is the product of arm's-length negotiations, within the range of possible judicial approval, and has no obvious deficiencies, the Court should grant preliminary approval and order that notice of a final fairness hearing be given pursuant to Federal Rule of Civil Procedure 23(e).

Plaintiffs respectfully request that the Court enter the accompanying Order: (1) provisionally certifying the Class for purposes of settlement; (2) appointing the Named Plaintiffs as the class representatives; (3) appointing Class Counsel; (4) preliminarily approving the Settlement Agreement; (5) approving the provision of notice of the settlement to the Class; and (6) setting a date for a fairness hearing.


DATED: December 23, 2016                                          *Attorneys for Plaintiffs & the*
                                                                                        *Settlement Class*

*/s/ Cyrus Mehri*
Cyrus Mehri (DC No. 420970)
Michael Lieder (DC No. 444273)
Joanna Wasik (DC No. 1027916)
MEHRI & SKALET, PLLC
1250 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Tel: (202) 822-5100
Fax: (202) 822-4997
cmehri@findjustice.com
mlieder@findjustice.com
jwasik@findjustice.com

Charles Firth*
Engelmeier & Umanah
706 Second Avenue South, Suite 1100
Minneapolis, MN 55402
Telephone: (612) 455-7720

Facsimile: (612) 455-7740
charlief@e-ulaw.com


*Pro Hac Vice Motion Pending


## CERTIFICATE OF SERVICE

I certify that on December 23, 2016, a true and correct copy of Plaintiffs'

Memorandum In Support of Final Approval of Class Action Settlement was served via

electronic mail on counsel and/or hand delivery for Defendant listed below:

Grace Speights
Morgan, Lewis & Bockius, LLP
111 Pennsylvania Avenue NW
Washington, DC 20004
Grace.speights@morganlewis.com


/s/ Cyrus Mehri
Cyrus Mehri
Counsel for the Plaintiffs
