**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| VERNON ROSS and DEBRA JOSEY, ) | |
| ) | |
| On behalf of themselves and all others ) | |
| similarly situated, ) | |
| ) | Civil Action No. 1:16-cv-02508-KBJ |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| LOCKHEED MARTIN CORP., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT LOCKHEED MARTIN CORPORATION'S MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS DISCOVERY**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  PROCEDURAL BACKGROUND ..................................................................... 2

III.  ARGUMENT ...................................................................................................... 4

    A.  Plaintiffs Have Not Pled Viable Class Claims And Therefore Are Not Entitled To Class Discovery. ................................................................. 4

        1.  Plaintiffs' Proposed Class Is Not Readily Ascertainable .......................... 6

        2.  Plaintiffs Cannot Satisfy Rule 23(a)'s Commonality Requirement .......... 8

    B.  Lockheed Martin Has Provided Plaintiffs With Ample Data And Documentation, And Plaintiffs Identify No Specific Information That Is Needed. ................................................................................................ 13

    C.  Postponing A Decision On Class Certification For More Than A Year Is Unnecessary And Prejudicial To Lockheed Martin ............................... 16

IV.  CONCLUSION ................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahmed v. HSBC Bank USA, Nat'l Ass'n*,
No. ED CV 15-2057-FMO, 2017 WL 4325587 (C.D. Cal. Sept. 25, 2017) ...........................5

*Bell v. Lockheed Martin Corp.*,
No. 08-6292, 2011 WL 6256978 (D.N.J. Dec. 14, 2011).........................................................9

*Benson v. Budget Rent A Car Sys., Inc.*,
Nos. 08–cv-4512. 10-cv-1302, 2018 WL 573110 (E.D. Pa. Jan. 25, 2018) ...........................13

*Bolden v. Walsh Constr. Co.*,
688 F.3d 893 (7th Cir. 2012) ...................................................................................................9

*Burton v. District of Columbia*,
277 F.R.D. 224 (D.D.C. 2011)..................................................................................................4

*Byrd v. City of Philadelphia*,
No. 12-4520, 2013 WL 5728669 (E.D. Pa. Oct. 22, 2013) ....................................................12

*Camacho v. Advocate Health Care*,
No. 11-5795, 2011 WL 5903471 (N.D. Ill. Nov. 22, 2011) ...................................................12

*DL v. District of Columbia*,
277 F.R.D. 38 (D.D.C. 2011), *vacated and remanded*, 713 F.3d 120 (D.C. Cir. 2013) ..........................................................................................................................................7

*Dukes v. Wal-Mart Stores, Inc.*,
603 F.3d 571 (9th Cir. 2010) ...................................................................................................9

*EEOC v. Honda of Am. Mfg., Inc.*,
No. 06-233, 2007 WL 1541364 (S.D. Ohio May 23, 2007)....................................................12

*Flores v. Starwood Hotels & Resorts Worldwide Inc.*,
No. SACV 14-1093 AG (ANx), 2015 WL 12912338 (C.D. Cal. May 18, 2015) ..........................................................................................................................................13

*Guzman v. Chipotle Mexican Grill, Inc.*,
No. 17-cv-02606-HSG (KAW), 2018 WL 6092730 (N.D. Cal. Nov. 21, 2018)......................5

*Irvine v. Am. Nat'l Bank & Trust Co. of Chicago*,
Nos. 84-417, 84-3159, 1991 WL 134182 (N.D. Ill. July 12, 1991).........................................12

*Jones v. Nat'l Council of Young Men's Christian Ass'ns of the U.S.*,
34 F. Supp. 3d 896 (N.D. Ill. 2014) .........................................................................................9

*Little v. Wash. Metro. Area Transit Auth.*,
    100 F. Supp. 3d 1 (D.D.C. 2015) ..................................................................................4

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*,
    910 F. Supp. 2d 891 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) .......................................................................................6

*Pigford v. Glickman*,
    182 F.R.D. 341 (D.D.C. 1998) .....................................................................................6

*Sakyi v. Estee Lauder Cos.*,
    298 F. Supp. 3d 16 (D.D.C. 2018) ...............................................................................4

*Smith v. City of Jackson*,
    544 U.S. 228 (2005) ...................................................................................................12

*Sprague v. Gen. Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) .......................................................................................8

*United Ass'n of Black Landscapers v. City of Milwaukee*,
    916 F.2d 1261 (7th Cir. 1990) ...................................................................................12

*Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*,
    274 F.R.D. 229 (S.D. Ill. 2011) ...................................................................................6

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................................3, 8, 9, 10

*Welch v. Eli Lilly & Co.*,
    No. 1:06-cv-0641-RLY-JMS, 2009 WL 734711 (S.D. Ind. Mar. 18, 2009) ..........................12

## Other Authorities

Fed. R. Civ. P. 23 ............................................................................................................ *passim*

Local Rules of the U.S. District Court for the District of Columbia 23.1(b) ...................................4

## I.      INTRODUCTION

Defendant Lockheed Martin Corporation ("Lockheed Martin") opposes Plaintiffs' Motion for Class Discovery ("Motion") for three reasons:  (1) Plaintiffs have not pled viable class claims and therefore are not entitled to class discovery; (2) Lockheed Martin gave Plaintiffs permission to use the extensive data and documents in their possession from the parties' mediation, and they have not articulated with any specificity what additional information they need to submit a motion for class certification; and (3) Lockheed Martin should not be required to incur the burden from the expansive discovery sought by Plaintiffs and the expense of another year of litigation when the Court has already concluded that Plaintiffs' class claims are not viable.

*First*, Plaintiffs ground their Motion in the assumption that because they have asserted class claims, they are entitled to take class discovery.  Plaintiffs ignore, however, that it is not enough merely to plead a class claim—they must plead a *viable* class claim.  Plaintiffs have not done so. Indeed, Plaintiffs have not identified, and presumably cannot identify, an ascertainable class of individuals who have been harmed by LM Commit, the system Plaintiffs purport to challenge, and they continue to assert class claims challenging the discretion afforded to leaders under LM Commit—a theory that the Court has already held does not give rise to Rule 23 commonality. Plaintiffs cannot avoid the viability requirement by arguing that, through class discovery, they may find a viable class claim.  Their obligation is to plead a viable class claim *before* the floodgates of discovery open—an obligation they have not met.

*Second*, Lockheed Martin produced substantial data and documents to Plaintiffs as part of the parties' pre-litigation mediation.  After receiving the Court's order requiring Plaintiffs to file a motion for class certification (or, in the alternative, a motion for class discovery) by April 16, 2019 (Dkt. 51), Lockheed Martin informed Plaintiffs that they could use these data and documents for this purpose notwithstanding the parties' mediation agreement, which required confidentiality.

This is the precise information that Plaintiffs' counsel repeatedly referenced during the December 14, 2018 oral argument, arguing that with it, Plaintiffs could satisfy their Rule 23 burden. (*See, e.g.*, Dec. 14, 2018 Hr'g Tr. at 54:7-13.)   Now, Plaintiffs argue that "considerable additional information" is needed but do not detail what is needed or why. (Pls.' Br. at 8.)  Plaintiffs should not be permitted to pursue broad, unspecified discovery when they have represented that they have the discovery they need and there is no indication that further discovery will yield evidence to support their class claims.

*Third*, by seeking six months of discovery followed by a five-month briefing schedule, Plaintiffs effectively ask the Court to postpone ruling on class certification for another year, which is both unnecessary and prejudicial.  Lockheed Martin should not be required to incur the cost and burden of another year of litigation when Plaintiffs offer no evidence that discovery is likely to substantiate their class claims, and in fact, the Court has already ruled that the only class theory Plaintiffs proffer is not viable.  Accordingly, Lockheed Martin respectfully requests that the Court deny Plaintiffs' Motion for Class Discovery.

## II.   PROCEDURAL BACKGROUND

On December 23, 2016, Plaintiffs filed this action and moved for preliminary approval of a class action settlement. (Dkt. 1, 4.)  The Court held a hearing on Plaintiffs' Preliminary Approval Motion on April 24, 2017, during which the Court expressed concern that Plaintiffs did not satisfy the requirements of Rule 23.  (*See* Mar. 17, 2017 Minute Order; Apr. 24, 2017 Minute Order; Apr. 24, 2017 Hr'g Tr. 13:25-14:12, 18:11-23.)  Following the April 24, 2017 hearing, the Court issued a decision denying preliminary approval of the proposed class action settlement.  (July 28, 2017 Order (Dkt. 16).)

In the Court's July 28, 2017 Order, it held that Plaintiffs' complaint failed to articulate a class theory that would satisfy Rule 23(a)'s commonality requirement and specifically identified several fundamental deficiencies with Plaintiffs' class claims:

- Plaintiffs failed to demonstrate that Rule 23(a)'s commonality requirement could be established because "they have not explained how it is that Lockheed's performance appraisal process systematically discriminates against African-Americans such that it qualifies as either a 'general policy of discrimination' or a 'testing procedure or other companywide evaluation method' that gives rise to discrimination claims that are susceptible to common proof." (*Id.* at 4 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 353 (2011)).)

- Plaintiffs' claims focused on Lockheed's alleged "policy" of "committing unrestrained discretion to individual supervisors," without identifying some alleged "common way" that the appraisers exercised their discretion in a manner that could plausibly have resulted in a racial disparity. (*Id.* at 39-40 (citing *Wal-Mart*, 564 U.S. at 355-56).)

The Court ultimately concluded that it was "clear" that Plaintiffs had "failed to demonstrate that the challenged performance evaluation system resulted in race discrimination against all class members through a mechanism that could be established through common proof." (*Id.* at 41.)

Following the Court's decision, Plaintiffs filed a First Amended Class Action Complaint on October 20, 2017, in which they attempted to address the concerns articulated in the Court's July 28, 2017 Order. (*See* Dkt. 29.) After it became apparent that this complaint likewise did not give rise to a claim that could be certified for settlement purposes, Plaintiffs filed their Second Amended Class Action Complaint ("SAC") on March 23, 2018. (Dkt. 34.) Lockheed Martin moved to dismiss/strike the class allegations in the SAC because, among other issues, Plaintiffs failed to allege claims that plausibly support a conclusion that they can satisfy the requirements of Rule 23. (Dkt. 35.)

On March 20, 2019, the Court denied Lockheed Martin's motion without prejudice, noting that "Defendant can re-raise the class-action arguments that appear in its motion to strike in its

opposition to Plaintiffs' motion to certify or motion for class discovery."[1]   (Dkt. 51.)[2]   In lieu of

seeking class certification, Plaintiffs have now moved for class discovery, which Lockheed Martin

opposes for the reasons set forth below.

## III.   ARGUMENT

### A.   Plaintiffs Have Not Pled Viable Class Claims And Therefore Are Not Entitled To Class Discovery.

Plaintiffs attempt to argue that because they have pled class action claims asserting that

Lockheed Martin's performance rating system, LM Commit, had a disparate impact on African

American employees and was part of a pattern or practice of racial discrimination, they are entitled

to class discovery.   (*See* Pls.' Br. at 4-7.)   Plaintiffs ignore, however, one key qualification.   In

*Burton v. District of Columbia*, cited by Plaintiffs, the court found "pre-certification discovery

should ordinarily be available where a plaintiff has alleged *a potentially viable class claim*."   277

F.R.D. 224, 230 (D.D.C. 2011) (emphasis added).   In other words, class discovery is not a means

---

[1]   Without waiver of its ability to renew any other aspect of its motion to dismiss/strike, Lockheed Martin respectfully renews its arguments as to Plaintiffs' breach of contract claim, which, irrespective of any arguments regarding Rule 23, fails as a matter of law.   Specifically, as set out in Argument Section II of Lockheed Martin's Memorandum in Support of Its Motion to Dismiss/Strike Plaintiffs' Class Action Claims and to Dismiss Plaintiffs' Breach of Contract Claim, Plaintiffs cannot state a third-party beneficiary claim for breach of contract because they are not intended beneficiaries of the contract.   (*See* Dkt. 35 at 23-26.)   Therefore, this claim should be dismissed now.

[2]   The Court also observed in its March 20, 2019 Order that Plaintiffs failed to move for class certification within ninety days as required under the local rules of the Court.   (Dkt. 51 at 1.)   Plaintiffs argue that this rule is an "artifact of another era" and "conflicts with current class action jurisprudence."   (Pls.' Br. at 6.)   However, "Local Rule 23.1(b) and its predecessors have been strictly applied in this Circuit."   *Little v. Wash. Metro. Area Transit Auth.*, 100 F. Supp. 3d 1, 5 (D.D.C. 2015) (citing *Howard v. Gutierrez*, 474 F. Supp. 2d 41, 53 (D.D.C. 2007)); *see also Sakyi v. Estee Lauder Cos.*, 298 F. Supp. 3d 16, 18 (D.D.C. 2018) (observing that Local Rule 23.1(b) is strictly enforced and "the D.C. Circuit has affirmed a district court's denial of a motion for an extension of time to move for class certification that was filed merely eleven days late").   So irrespective of whether Plaintiffs believe the rule to be consistent with recent legal developments, it remains the rule of the Court.

by which to find a class claim.  Before the floodgates of class discovery open, plaintiffs must put forward sufficient allegations to demonstrate that it is at least possible that they have pled a claim that satisfies the requirements of Rule 23.[3]

As other courts have observed, "[p]rior to class certification under Rule 23, discovery lies entirely within the discretion of the Court."  *Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. ED CV 15-2057-FMO (SPx), 2017 WL 4325587, at *2 (C.D. Cal. Sept. 25, 2017) (citations omitted).  To demonstrate pre-certification discovery is appropriate, the plaintiff must either make a prima facie showing that the Rule 23 class action requirements are satisfied, or show "that discovery is likely to produce substantiation of the class allegations."  *Id.* (citing *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985)); *Guzman v. Chipotle Mexican Grill, Inc.*, No. 17-cv-02606-HSG (KAW), 2018 WL 6092730, at *2 (N.D. Cal. Nov. 21, 2018) ("District courts do not abuse their discretion by refusing to allow pre-certification discovery where the plaintiff failed to show either a prima facie case for class relief under Rule 23 or that discovery was likely to produce substantiation of the class allegations.").  "[T]he need for discovery, the time required, and the probability of discovery providing necessary 'factual information' are also relevant factors 'bearing on the correctness of the trial court's exercise of discretion.'"  *Ahmed*, 2017 WL 4325587, at *2 (quoting *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977)).

Here, as detailed in Lockheed Martin's Motion to Dismiss/Strike Plaintiffs' Class Action Claims (Dkt. 35), Plaintiffs do not plead viable class claims and have not set forth a *prima facie* case that Rule 23 can be satisfied or that discovery is likely to substantiate their claims.  Indeed,

---

[3]   Plaintiffs support their Motion with several declarations, many of which are offered by other Plaintiffs' lawyers.  A Plaintiffs' lawyer, or even a Plaintiffs' expert, arguing by way of a declaration that another Plaintiffs' lawyer should be permitted to take class discovery is not valid or meaningful evidence that class discovery is warranted *in this case*, and Lockheed Martin respectfully requests that the Court disregard these declarations.

the same two issues that the Court found precluded class certification before justify the denial of class discovery now:  (1) Plaintiffs do not identify an ascertainable class and (2) Plaintiffs' claims and the claims of the class do not share a common contention.

### 1. Plaintiffs' Proposed Class Is Not Readily Ascertainable.

As the Court has already held, Plaintiffs have not identified a certifiable class for Rule 23 purposes because their class definition "does not contain any objective criteria that permit identification of the particular African-American employees who allegedly suffered concrete injury as a result of Lockheed Martin's performance appraisal system."  (Dkt. 16 at 5, 17.)  In addition to Rule 23(a)'s explicit requirements, there is an implied "common sense" requirement that a proposed class "must be sufficiently definite 'that it is administratively feasible for the court to determine whether a particular individual is a member.'"  *Pigford v. Glickman*, 182 F.R.D. 341, 346 (D.D.C. 1998) (quoting 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1760 at 121); *see also In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 910 F. Supp. 2d 891, 911 (E.D. La. 2012) (stating that a class must be "adequately defined and clearly ascertainable by reference to objective criteria"), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014); *Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) ("Where a class is overbroad and could include a substantial number of people who have *no claim* under the theory advanced by the named plaintiff, the class is not sufficiently definite." (emphasis added)).  Here, no ascertainable class exists.

Plaintiffs seek to represent "all African-American salaried non-represented employees below the level of Vice President (levels 1 through 7) employed by Lockheed in the United States at any time during the liability period."  (SAC ¶ 171.)  Like their original class definition, this new class definition lacks "any objective criteria that permit identification of the particular African-American employees who allegedly suffered concrete injury" as a result of Lockheed Martin's

6

allegedly biased performance appraisal system. (Dkt. 16 at 17.) Instead, it presumes that the entire

putative class has been harmed, which the Court has already acknowledged simply cannot be true.

(Apr. 24, 2017 Hr'g Tr. at 23:10-12 ("The point of a class action is to bring people who have, who

are able to state a claim and we're going to bring them all together because it's more efficient . . .

[Y]ou've drawn your class so broadly you may have people in it who actually can't state a claim

and shouldn't have been here at all."); *see also id.* at 18:20-21 ("[W]hat I'm worried about is that

the definition of your class is pulling in people who may be perfectly well-situated.").)

Plaintiffs attempt to circumvent the fact that their class definition remains as deficient now

as it was over a year ago by suggesting that, with class discovery, they will identify a class. For

example, Plaintiffs argue:

- "Plaintiffs need to acquire considerable additional information before they can make informed decisions about the proposed class/subclass definition(s)." (Pls.' Br. at 8.);

- "Plaintiffs will also evaluate the proposed class definition after completion of class discovery." (*Id.* at 12.)

Rather than justify the discovery Plaintiffs seek, these admissions confirm the inadequacy of

Plaintiffs' existing class definition but give no cause to believe that after forcing Lockheed Martin

to incur the burden and expense of full class discovery, Plaintiffs will articulate an ascertainable

class.[4]  Indeed, merely articulating, as Plaintiffs have, that they need discovery to establish that

there is an average difference in ratings does nothing to identify a class of persons who have

---

[4]   Plaintiffs' reliance on *DL v. District of Columbia*, 277 F.R.D. 38 (D.D.C. 2011), *vacated and remanded*, 713 F.3d 120 (D.C. Cir. 2013), to suggest that it is not uncommon to overhaul a class definition after discovery is misplaced.  In *DL*, plaintiffs filed an amended complaint, which "retained the original class definition but divided the class into four subclasses." *Id.* at 43.  Thus, plaintiffs did not substantially change the class definition—as would be needed here—but rather divided it into subgroups.

received a discriminatorily lower rating.  In other words, while Plaintiffs tacitly admit their current class definition does not suffice, there is no reason to believe discovery will cure this defect.

### 2.       Plaintiffs Cannot Satisfy Rule 23(a)'s Commonality Requirement.

In *Wal-Mart*, the Supreme Court "changed the landscape that a district court must navigate when considering whether a putative class action satisfies Rule 23(a)'s commonality requirement." (Dkt. 16 at 33 (citation omitted).)  The Court cautioned that Rule 23(a)'s commonality requirement is "easy to misread" because, at first glance, any competently crafted complaint raises common questions.  *Wal-Mart*, 564 U.S. at 349.  However, it is not enough to articulate just *any* common question of law or fact.  *Id.* at 349-51.  Rather, the Court explained that to satisfy Rule 23(a):

> [Plaintiffs'] claims must depend upon *a common contention*—for example, the assertion of discriminatory bias on the part of the same supervisor.  That common contention, moreover, must be of such a nature that it is *capable of classwide resolution*—which means that determination of its truth or falsity will *resolve an issue that is central to the validity of each one of the claims in one stroke*.

*Id.* at 350 (emphasis added); *see also Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) ("It is not every common question that will suffice, however; at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality.").

The Supreme Court further explained that "the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury," does not suffice.  *Wal-Mart*, 564 U.S. at 350.  This is because "the crux of the inquiry [in a Title VII case] is the reason for a particular employment decision."  *Id.* at 352 (internal quotation marks and citation omitted).  Therefore, commonality demands not merely the assertion of a common claim (i.e., a violation of Title VII) but also the identification of a question that links the reasons for all of the challenged employment decisions and "produce[s] a *common answer* to the crucial question *why* was I disfavored."  *Id.* (emphasis added).  In short, "[i]f *Wal-Mart* teaches anything,

it is that plaintiffs can maintain . . . an employment discrimination lawsuit as a class action only if they can identify a company-wide 'common contention' regarding the reasons that each member of the class has suffered an injury."[5]  (Dkt. 16 at 37 (citing *Wal-Mart*, 564 U.S. at 350).)

And, since *Wal-Mart*, other courts have similarly held that challenges to managerial discretion, even repackaged as challenges to so-called companywide policies/practices, are not a "common contention" for purposes of Rule 23(a) commonality.  *See, e.g.*, *Bolden v. Walsh Constr. Co.*, 688 F.3d 893, 898 (7th Cir. 2012) ("*Wal-Mart* tells us that local discretion cannot support a company-wide class no matter how cleverly lawyers may try to repackage local variability as uniformity."); *Jones v. Nat'l Council of Young Men's Christian Ass'ns of the U.S.*, 34 F. Supp. 3d 896, 906 (N.D. Ill. 2014) ("The fact that there was some structure to the evaluation, compensation, and promotion process does not change the fact that the structure reinforced the discretionary nature of the decision making in this area."); *Bell v. Lockheed Martin Corp.*, No. 08-6292 (RBK/AMD), 2011 WL 6256978 (D.N.J. Dec. 14, 2011) (rejecting argument that guidelines around starting salary, merit increases, promotional increases and job postings gave rise to commonality because plaintiffs' claims depended on the discretion of individual managers in each of Lockheed's facilities).

---

[5]    Plaintiffs argue that if their contention that "Lockheed has evaluated all salaried employees under the same companywide performance appraisal system" is borne out, this matter will "differ dramatically from *Wal-Mart*, in which no specific policy . . . was identified." (Pls.' Br. at 7-8.)  Plaintiffs' characterization of *Wal-Mart* is inaccurate.  *Wal-Mart* involved "parameters and guidelines that [were] highly uniform" across the proposed class and across the company and within which managers were responsible for exercising business judgment— i.e., a framework within which managers made decisions.  *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 607, 615 (9th Cir. 2010); *see Wal-Mart*, 564 U.S. at 343 ("for salaried employees . . . higher corporate authorities have discretion to set their pay within pre-established ranges").  Accordingly, as *Wal-Mart* explains, the issue is not whether there is a company-wide framework, guideline or policy (as in fact there was in *Wal-Mart*), but rather whether Plaintiffs can show a common and discriminatory mode of exercising discretion within that framework, guideline or policy.

At the heart of Plaintiffs' class claims in this case is their allegation that "Lockheed's performance appraisal system is biased against African American salaried employees in levels 1-7 [and] [t]his alleged bias results in African American salaried employees throughout the company receiving lower performance appraisal rankings on average than their white peers." (Pls.' Br. at 2.)  However, as this Court has already recognized:

> Plaintiffs have failed to demonstrate that the commonality prerequisite for Rule 23 class certification can be adequately established, because they have not explained *how* it is that Lockheed Martin's performance appraisal process systematically discriminates against African-Americans such that it qualifies as either a "general policy of discrimination" or a "testing procedure or other companywide evaluation method" that gives rise to discrimination claims that are susceptible to common proof.

(Dkt. 16 at 4 (quoting *Wal-Mart*, 564 U.S. at 353).)  Instead, Plaintiffs contend that Lockheed Martin's performance appraisal process lacked "'measurable indicators' of achievement, which . . . allegedly resulted in inadequate safeguard against bias in the assessment of African American employees." (*Id.* at 2, 11, 39.)  However, "[t]he mere fact that all of Lockheed's supervisors used the same allegedly ill-defined numerical rubric to grade employee performance . . . says nothing about how individual supervisors exercised what discretion was left to them, and after *Wal-Mart*, it is clear beyond cavil that such silence isn't enough." (*Id.* at 39.)

Plaintiffs attempt to circumvent this conclusion by identifying what they characterize as three so-called "Biased Sub-Policies" that they argue disadvantage African American employees. (*See* SAC ¶¶ 47, 65, 72.)  These include (1) the "Make the Commitment" process where employees draft their own "commitments" at the start of the performance year (SAC ¶¶ 47-64); (2) leaders' evaluation of employees based on specific, defined "behaviors," such as "Shape the Future" and "Energize the Team" (SAC ¶¶ 65-71); and (3) use of management-led "calibration sessions" during which leaders discuss final performance ratings (SAC ¶¶ 72-90).  Tellingly, Plaintiffs' SAC

includes a fourth "Biased Sub-Policy"—"excessive subjectivity"—which Plaintiffs now ignore. (SAC ¶¶ 91-95.)  But, in their SAC, Plaintiffs assert that the "Make the Commitment," behavior evaluation, and calibration processes all suffer from excessive subjectivity that works to the detriment of African American employees.  (*Id.*)

As the Court observed, at best, the "Sub-Policies" identified by Plaintiffs frame the way in which leaders exercise discretion, but they do not change the fundamental concept that leaders have discretion to determine performance ratings.  And it is this that precludes the commonality required under Rule 23(a).  (*See* Dec. 14, 2018 Hr'g Tr. at 56:18-21 ("Each of the sub-policies as you have alleged them reduce to discretionary judgment by the managers at each stage of this process.  So it really is no different than what you said originally."); *id.* at 55:21-56:1 ("So the only difference is the prior complaint talked more about the discretion that is exercised under this same system.  Whereas, this complaint shields those facts about the discretion and focuses more on what you say is the three steps of the way in which the discretion is being exercised.").)  Because the Court has already properly concluded that Plaintiffs still challenge the discretionary decisions of managers and this still precludes commonality, class discovery should be denied.

Again, Plaintiffs attempt to avoid this result by arguing that through discovery, they will attempt to find a common claim.  For example, Plaintiffs argue:

- "[I]t is not possible for Plaintiffs to be certain, prior to discovery, which elements of LM Commit caused them harm, or if multiple components are at fault, which ones cause the most harm."  (Pls.' Br. at 15.)

- "[S]tatistical analysis will allow Plaintiffs to identify the 'specific employment practice' or practices that harmed the class, and thereby attempt to satisfy the commonality requirement for class certification."  (*Id.* at 16.)

However, discovery will not change the facts.  As the parties agree, each year individual employees are responsible for setting their commitments; leaders are responsible for evaluating employee performance against specific behaviors; and, at year end, leaders are responsible for issuing

employees' final performance ratings.  (*See* Pls.' Br. at 8-9.)  And, it is these facts that demonstrate that the foundation of LM Commit is managerial discretion, which this Court has already held precludes Rule 23 certification and obviates the need for any discovery.[6]

Further, the purpose of class discovery is not to search for a class claim but rather to uncover the evidence needed to prove the viable class claim articulated in the complaint.  In fact, where, as here, plaintiffs are not even able to identify the specific policy or practice that they purport to challenge, the claim should be dismissed.  *See Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) (holding that when pleading a disparate impact claim, "it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact").[7]  For example, in *Welch v. Eli Lilly & Co.*, No. 1:06-cv-0641-RLY-JMS, 2009 WL 734711, at *8 (S.D. Ind. Mar. 18, 2009), the plaintiffs, in their complaint, purported to challenge Lilly's performance management ("PM") process, arguing that it had a disparate impact on African

---

[6]   On pages 9 and 10 of their Brief, Plaintiffs set out topics on which they purportedly need discovery.  Of the first series of bullets—related to whether LM Commit is a so-called centralized process—only the last bullet has any arguable bearing on class certification and could be addressed in thirty minutes through a Rule 30(b)(6) deposition.  The second series of bullets simply restates Plaintiffs' allegations regarding the LM Commit process, which are challenges to manager discretion and do not give rise to a viable class claim—nor do they justify broad and burdensome class discovery.

[7]   *United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1264 (7th Cir. 1990) (dismissing plaintiffs' disparate impact claim because plaintiffs failed to identify any specific promotional practice that allegedly caused the racial disparity); *Byrd v. City of Phila.*, No. 12-4520, 2013 WL 5728669 (E.D. Pa. Oct. 22, 2013) (dismissing disparate impact claim where plaintiff failed to identify facially neutral policy); *Camacho v. Advocate Health Care*, No. 11 C 5795, 2011 WL 5903471, at *2 (N.D. Ill. Nov. 22, 2011) (dismissing disparate impact claim based on allegation that "Defendant maintained practices and policies which discriminated against and had a disparate impact against Plaintiff and other female employees"); *EEOC v. Honda of Am. Mfg., Inc.*, No. 2:06-cv-0233, 2007 WL 1541364, at *5 (S.D. Ohio May 23, 2007) ("[A] plaintiff must still identify, at the pleading stage, a specific facially neutral policy or practice that resulted in disparate impact."); *Irvine v. Am. Nat'l Bank & Trust Co. of Chi.*, Nos. 84 C 417, 84 C 3159, 1991 WL 134182, at *6 (N.D. Ill. July 12, 1991) (holding that plaintiff who alleged only that defendant systematically compensated females at a lower rate than men had "wholly failed to identify" a neutral policy to support a disparate impact claim).

American employees and impacted their compensation and advancement opportunities. The court dismissed the claim, holding: "Lumping all of Lilly's personnel decisions affecting virtually all Lilly employees into a single 'PM Process' does not isolate the specific employment practice that is allegedly responsible for the adverse impacts expressed in the Plaintiffs' Second Amended Complaint. Plaintiffs' allegations thus fail to give Lilly fair notice of the Plaintiffs' disparate impact claims."

Having identified no viable class claim, Plaintiffs should not be permitted to go in search of one through class discovery, and, therefore, their Motion should be denied. *See Benson v. Budget Rent A Car Sys., Inc.*, Nos. 08–cv-4512. 10-cv-1302, 2018 WL 573110, at *4 (E.D. Pa. Jan. 25, 2018) (after denying class certification on the basis that the plaintiffs failed to satisfy Rule 23(a)'s commonality requirement, denying further discovery because "[t]o permit class discovery at this stage in the litigation would result in a fishing expedition that would create an enormous cost to the defendant, and would not change the outcome of plaintiff's proposed class certification"); *see also Flores v. Starwood Hotels & Resorts Worldwide Inc.*, No. SACV 14-1093 AG (ANx), 2015 WL 12912338, at *3 (C.D. Cal. May 18, 2015) ("Also, if a class action complaint could survive a motion to dismiss based merely on the need for class discovery, then many, if not all, class action complaints would have expansive class allegations and definitions to permit a fishing expedition during discovery. The Court is troubled by this possibility.").

**B.      Lockheed Martin Has Provided Plaintiffs With Ample Data And Documentation, And Plaintiffs Identify No Specific Information That Is Needed.**

Plaintiffs' argument that "[t]he required data is in the sole possession and control of Lockheed and is not accessible to Plaintiffs" (Pls.' Br. at 13) is incorrect—Plaintiffs already have any data they arguably need. Indeed, as Plaintiffs acknowledge in their brief, on April 4, 2019, well in advance of Plaintiffs' April 16 deadline to file a motion for class certification (or, in the

alternative, a motion for class discovery), Lockheed Martin offered to allow Plaintiffs to use all data and documents that it produced for mediation purposes. (*See* Pls.' Br. at 8; *see also id.* at 19 (acknowledging that Plaintiffs already have documents reflecting LM Commit instructions and training provided to leaders); Apr. 4, 2019 Email from K. Katzenstein to C. Mehri attached hereto as **Exhibit 1**.) Specifically, Lockheed Martin already produced to Plaintiffs data reflecting the performance, compensation, and job histories of all U.S.-based, regular employees who were active in an exempt, director-level or below position at any point on or after January 1, 2011 through the date of the data pull in late 2015. This includes data regarding performance ratings (including overall commitment and behavior scores and final ratings), merit increases, pay adjustments and incentive compensation awards, promotions and other job movements, and separations for a nearly four-year period.[8] In addition, Lockheed Martin produced documentation regarding the LM Commit system, including materials regarding the "Make the Commitment" process and the definitions of the LM Commit behaviors, as well as guidance materials provided to leaders.

Repeatedly, during the December 14, 2018 hearing, Plaintiffs' counsel suggested that he had the information needed to demonstrate that LM Commit had a discriminatory impact on African American employees but was "duty bound" not to disclose it as a result of the parties' mediation agreement. *See, e.g.*, Dec. 14, 2018 Hr'g Tr. at 54:7-13 ("THE COURT: How do you know the end result has a discriminatory outcome? MR. MEHRI: We know that and we can't share that, Your Honor. Okay? That's all I can tell you. THE COURT: If there's stuff that we can't - MR. MEHRI: We're duty-bound not to give it to Your Honor."); *id.* at 54:21-23 ("MR.

---

[8] Despite access to such extensive information, Plaintiffs have never been able to articulate which African American employees should have received a higher rating or why, and they offer nothing to suggest that the production of additional data will cure this shortcoming.

MEHRI: It's not up to me.  I'm duty-bound. What we learned in mediation is not in our complaint, I'm duty-bound to that.").

And when asked what more was needed, Plaintiffs' counsel did not identify additional information that should be produced, but rather represented that Plaintiffs need to share the information they already have, provide related expert reports, and perhaps seek a Rule 30(b)(6) deposition on LM Commit:

> The Court:   Seeking what facts? What facts don't you have that would allow you to respond adequately to the defendant's contention that you can't satisfy the commonality requirement?
>
> Mr. Mehri:   Well, first of all, there are facts that we have that we can't share with you. You know that from the prior posture of this case.  So the first thing we would do, we share with you the statistical analysis.  Second thing we would do is provide you expert testimony to go through exactly how the sub-policies are skewed against African-American employees.  So we have access to information that we can't share with you.  But when class discovery can go forward, then we can share it with you.  Take a few depositions, we could do it very quickly.

(Dec. 14, 2018 Hr'g Tr. at 22:18-23:2; *see id.* at 22:15-17 ("Well, Your Honor can move very expeditiously.  What we need is a couple of depositions, for 30(b)(6) kind of depositions.").)

Further, as Plaintiffs themselves acknowledge, they have extensive knowledge of the LM Commit process as employees who have both received LM Commit ratings and rated other employees.  (Pls.' Br. at 8 ("Dr. Ross and Ms. Josey have significant information about the operation of LM Commit as long-time employees of the company.").)  As a result, Plaintiffs should have some understanding of the aspect of the process that allegedly had a negative impact on their respective performance ratings and be able to articulate the specific discovery they need to address that claim.  For example, did they fail to identify stretch Commitments?  Did their leaders rate

them too low on a particular behavior?  Was their rating reduced in a calibration session?  Or was it something else entirely, as their individual allegations seem to suggest?[9]

However, instead, Plaintiffs now contend they need more, but they do not identify with any specificity for the Court or Lockheed Martin what is needed and why.  (*See* Pls.' Br. at 8 ("Plaintiffs need to acquire considerable additional information.").)  They simply argue that because they have pled class claims, they are entitled to class discovery.  Moreover, to the extent that Plaintiffs' statistical expert purports to need data, as discussed above, Plaintiffs already have extensive data and Lockheed Martin told Plaintiffs that they may use these data for purposes of their class certification motion.  Plaintiffs' Industrial Organizational Psychologist likewise already has access to extensive documentation regarding the LM Commit process.  (*See* Pls.' Br. at 19 (acknowledging that the documentation they seek has already been produced but arguing that they are entitled to more).)  But, regardless, Plaintiffs' experts stating what they might do has no bearing on whether discovery is appropriate in the first instance and, as discussed above, here it is not.

With no specific discovery plan, no sound rationale for the information sought, and no explanation as to how additional discovery will overcome the fact that performance ratings are determined by leaders who exercise their independent judgment, Plaintiffs' Motion should be denied.

### C.      Postponing A Decision On Class Certification For More Than A Year Is Unnecessary And Prejudicial To Lockheed Martin.

Plaintiffs ask this Court for six months of fact discovery followed by a five-month briefing schedule on Plaintiffs' anticipated motion for class certification, effectively pushing out any

---

[9]      Notably, the alleged aspects of the LM Commit process that Plaintiffs now purport to challenge are inconsistent with their individual allegations.  For example, neither Dr. Ross nor Ms. Josey assert that they did not set adequate Commitments.  To suggest they need discovery on these topics when the named Plaintiffs make no such challenges only underscores the fact that Plaintiffs have no cognizable class theory.

decision on that motion until mid- or late-2020.  (*See* Pls.' Br. at 19-21.)  Lockheed Martin does not dispute that ordinarily, class certification briefing would span five months or more.  Here, however, it contends that it should not have to incur the expense and burden of six months of class discovery followed by five months of class certification briefing when the Court has already found, on the face of the operative Complaint, that Plaintiffs are challenging managerial discretion—a claim that cannot be certified under Rule 23.  (*See* Dec. 14, 2018 Hr'g Tr. at 56:18-21 ("Each of the sub-policies as you have alleged them reduce to discretionary judgment by the managers at each stage of this process.  So it really is no different than what you said originally."); *see also id.* at 19:9-11 ("Because unless and until I see this happening clearly at the level of LM Commit versus individual managers exercising their discretion, I can't certify this."); *id.* at 24:13-20 ("But the material issue that I'm trying to drill down on is whether and to what extent LM Commit is causing the statistical anomalies that you see, or the fact that LM Commit gives discretion to its managers and it's the exercise of the manager's discretion that's causing the anomalies that you see . . . and that's the question on which commonality turns.").)  For this reason too, Lockheed Martin respectfully requests that Plaintiffs' Motion be denied.

## IV.    CONCLUSION

For the foregoing reasons, Lockheed Martin respectfully requests that Plaintiffs' Motion for Class Discovery be denied, or, in the alternative, that Plaintiffs be required to articulate exactly what discovery is needed and why so that the scope of discovery is limited and the burden on Lockheed Martin mitigated.

Dated:  April 30, 2019

Respectfully submitted,

/s/ *Krissy A. Katzenstein*
Grace E. Speights (D.C. Bar No. 392091)
grace.speights@morganlewis.com
Krissy A. Katzenstein (D.C. Bar No. 1002429)
krissy.katzenstein@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel:     (202) 739-3000
Fax:     (202) 739-3001

Michael J. Burkhardt (*pro hac vice*)
michael.burkhardt@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel:     (215) 963-5000
Fax:     (215) 963-5001

*Counsel for Defendant Lockheed Martin Corp.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of April, 2019, a true and correct copy of the foregoing

document has been served via CM/ECF on the following:

Cyrus Mehri
Michael Lieder
Joanna Wasik
MEHRI & SKALET, PLLC
1250 Connecticut Avenue NW, Suite 300
Washington, DC 20036
Tel: (202) 822-5100
Fax: (202) 822-4997
cmehri@findjustice.com
mlieder@findjustice.com
jwasik@findjustice.com


/s/ *Krissy A. Katzenstein*
Krissy A. Katzenstein