## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | ) | |
| VERNON ROSS and DEBRA JOSEY, | ) | |
| *on behalf of themselves and all others* | ) | |
| *similarly situated*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 16-cv-2508 (KBJ) |
| | ) | |
| LOCKHEED MARTIN CORP., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION DENYING
## PLAINTIFFS' MOTION FOR PRE-CERTIFICATION DISCOVERY

This Court previously denied a motion for preliminary class certification and for

preliminary approval of a settlement agreement that Plaintiffs Vernon Ross and Debra

Josey ("Plaintiffs") filed along with their initial complaint, *see Ross v. Lockheed Martin

Corp.* ("*Ross I*"), 267 F. Supp. 3d 174, 178 (D.D.C. 2017), and in the wake of that

determination, Plaintiffs have filed a Second Amended Class Action Complaint, to

provide additional details regarding the operation of Defendant Lockheed Martin's

performance review process ("LM Commit") in support of their claim that Lockheed

Martin has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*,

and also 42 U.S.C. § 1981, in a manner that can be established, and redressed, on a

classwide basis.  (*See* Second Am. Compl. ("Am. Compl."), ECF No. 34.)  Plaintiffs

have now also requested pre-certification discovery, ostensibly to gather additional

information in support of their class claims.[1]  (*See* Pls.' Mem. in Supp of Mot. for Class Discovery ("Pls.' Mot."), ECF No. 54, at 6, 26.)[2]  For the reasons explained below, neither the additional details that Plaintiffs have provided in the Second Amended Complaint nor the information that Plaintiffs hope to gather prior to filing their motion for class certification is likely to assist them in making the required prima facie showing that their class action plausibly satisfies Rule 23's certification requirements. Consequently, this Court filed an Order on May 28, 2020, that **DENIED** Plaintiffs' discovery motion.  (*See* Order, ECF No. 63.)

The instant Memorandum Opinion explains the reasons for that order.  In short, the existence of a class action that is plausibly viable is a prerequisite to getting discovery in aid of a motion for class certification, and Plaintiffs bear the burden of demonstrating that discovery measures are likely to produce information that substantiates their contention that they have identified a viable class action.  Under the circumstances presented here, Plaintiffs cannot carry that burden, as this Court made clear in *Ross I*, 267 F. Supp. 3d at 197 (holding that Plaintiffs failed to demonstrate commonality because they did not point to a "testing procedure or other companywide

---

[1] Plaintiffs contend that pre-certification discovery will allow them to present "(a) evidence that Lockheed's performance appraisal system is an employment policy that applies uniformly to salaried employees throughout the company; (b) evidence that the system is poorly designed and racially biased; (c) evidence of a pattern or practice of intentional discrimination; (d) statistical evidence regarding the impact of the challenged practices and the intentional discrimination on performance appraisal rankings; (e) statistical and other evidence of the resulting racial disparities in pay, promotion, and termination decisions; and (f) evidence sufficient to raise common questions regarding other factual disputes between the parties[,]" including "Lockheed's contracts with the federal government to support Plaintiffs' breach of contract claim[.]"  (Pls.' Mot. at 6, 26.)

[2] Page-number citations to the documents that the parties and the Court have filed refer to the page numbers that the Court's Electronic Filing System ("ECF") automatically assigns.

evaluation method that can be charged with bias[,]" nor did they offer "[s]ignificant proof that an employer operated under a general policy of discrimination" (internal quotation marks and citation omitted).)  In other words, pre-certification discovery is not warranted because, regardless, the facts alleged in Plaintiffs' complaint concerning the operation of Lockheed Martin's performance review process make it manifestly implausible that the 5,000 African-American Lockheed Martin employees who are members of the putative class have suffered a common injury that can either be redressed through a single remedy on a classwide basis or be proven through common questions of fact that predominate over individualized proof of injury.

I.     **LEGAL STANDARDS**

A.     **Motions For Pre-Certification Discovery**

Courts must determine whether a legal action can be maintained as a class action as soon as is "practicable" after the complaint is filed.  Fed. R. Civ. P. 23(c)(1). Pursuant to Rule 23, a class action is viable if plaintiffs can demonstrate that their putative class satisfies the four threshold requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation, *see Amgen v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 460 (2013)—and also that the proposed class action fits one of the categories listed in Rule 23(b).  As relevant here, one of the Rule 23(b) categories includes cases where "a single injunction or declaratory judgment would provide relief to each member of the class," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (citing Fed. R. Civ. P. 23(b)(2)), and another type of Rule 23(b) class action is one in which "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class

action is superior to other available methods for fairly and efficiently adjudicating the controversy[,]" Fed. R. Civ. P. 23(b)(3).  Thus, plaintiffs seeking to litigate their claims as a class action must show (1) numerosity, commonality, typicality, and adequacy of representation, and (2) either indivisibility of the requested relief, or predominance and superiority.  *See, e.g., Wal-Mart*, 564 U.S. at 360.

Courts have recognized that the exact "shape and form of a class action evolves only through the process of discovery." *Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (internal citation and quotation marks omitted). *Cf. Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) ("[O]ften the pleadings alone will not resolve the question of class certification and [] some discovery will be warranted[.]"); *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008) (same); *In Re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1086 (6th Cir. 1996) (same).  As a result, courts can permit plaintiffs to flesh out the contours of their proposed class action for certification purposes by engaging pre-certification discovery, and discovery is especially warranted in cases where, for example, getting more information about the plaintiffs' claims "will resolve factual issues" such as whether a "set of subclasses exist[,]" *Artis v. Deere & Co.*, 276 F.R.D. 348, 351 (N.D. Cal. 2011), or where there is discoverable information that is "relevant to class certification [requirements] such as numerosity[,]" *Dziennik v. Sealift, Inc.*, No. 05-cv-4659, 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006).

But it is similarly well established that the simple filing of a classwide complaint does not automatically "unlock the doors of discovery for a plaintiff[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  In fact, trial courts "have broad powers to regulate

or prevent discovery and such powers have always been freely exercised." *Brennan v. Local Union No. 639, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers,* 494 F.2d 1092, 1100 (D.C. Cir. 1974).  *Cf. Pilgrim v. Universal Health Card LLC*, 660 F.3d 943 (6th Cir. 2011) (affirming a trial court's pre-discovery strike of class allegations).  To be sure, some courts have historically been "hesitant to delve deep into the merits of [a] plaintiff's class allegations" when there has been "no discovery whatsoever." *Smith v. Wash. Post Co.*, 962 F. Supp. 2d 79, 90 (D.D.C. 2013). However, recent developments in the law have also reflected the acknowledgment that proceeding to nationwide class action discovery "can be expensive[,]" and that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (internal citation and quotation marks omitted).

These pronouncements confirm that a class-action pleading must present *plausible* classwide claims before plaintiffs can proceed with class discovery.  *See id.* at 558 (finding that "the costs of modern [nationwide] litigation and the increasing caseload of the federal courts counsel against sending parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint" (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984))).  This means that, while "pre-certification discovery should ordinarily be available where a plaintiff has alleged a potentially viable class claim[,]" *Burton v. District of Columbia*, 277 F.R.D. 224, 230 (D.D.C. 2011), if "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met," then it is reasonable to conclude that "no amount of discovery" can overcome that

deficiency, *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 284 F.R.D. 238, 245–46 (E.D. Pa. 2012).  In other words, "when a nationwide class action is alleged involving potentially enormous discovery, plaintiff must advance a prima facie showing that discovery is likely to produce information substantiating the viability of a class[,]" *Schager v. Union Fid. Life Ins. Co.*, No. 85-cv-8244, 1987 WL 13570, at *4 (N.D. Ill. July 6, 1987) (internal citation omitted)—*i.e.*, the plaintiffs must "demonstrate that discovery measures are likely to produce persuasive information substantiating the class action allegations[,]" *Doninger v. Pac. Nw. Bell, Inc*., 564 F.2d 1304, 1313 (9th Cir. 1977); *see, e.g.*, *id.* (finding no abuse of discretion where the district court had denied pre-certification discovery on the grounds that, "[r]egardless of the discovery that might have been undertaken, the numerosity and impracticable joinder requirements of section (a) of Rule 23 could never be met" and, "even if the preliminary prerequisites of section (a) were met, there was no reasonable possibility that any of the section (b) hurdles could be overcome").

Finally, and importantly, in order to determine whether pre-certification discovery is warranted, courts must refrain from going "beyond a consideration of a prima facie showing and into a consideration of Plaintiff's likelihood of success at the class certification stage." *Kaminske v. JP Morgan Chase Bank N.A*., No. 09-cv-918, 2010 WL 5782995, at *3 (C.D. Cal. May 21, 2010).  At the same time, "speculation as to what the broad discovery that [plaintiffs] seek *might* show is insufficient to meet their burden of showing that additional discovery is likely to produce substantiation of the class allegations." *Manigo v. Time Warner Cable, Inc.*, No. 16-cv-6722, 2016 WL 9281314, at *2 (C.D. Cal. Dec. 29, 2016) (emphasis in original).

### B.     The Substantive Standards That Govern Plaintiffs' Claims

In order to evaluate properly whether Plaintiffs have plausibly alleged claims that can be litigated and remedied on a classwide basis, as Rule 23 requires, it is important to understand the contours of the race discrimination and contract claims that Plaintiffs have brought against Lockheed Martin.  As alleged in their complaint, Plaintiffs' classwide discrimination claims involve two distinct theories of race-based discrimination under Title VII—*i.e.*, disparate impact discrimination (*see* Am. Compl. ¶ 183 (Count I)) and disparate treatment discrimination (*see id.* ¶ 189 (Count II))—and Plaintiffs also maintain that Lockheed Martin's performance evaluation scheme constitutes race-based discrimination in violation of section 1981 of Title 42 of the United States Code (*see id.* ¶ 196 (Count III)), and breaches federal contracts that require nondiscriminatory treatment of employees (*see id.* ¶ 201–06).

As a general matter, pursuant to Title VII, a plaintiff who alleges that she has suffered employment discrimination may proceed under both "disparate treatment" and "disparate impact" theories.  *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009); *see also Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971).  "Disparate treatment" in violation of Title VII "occurs when the employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin." *Anderson v. Zubieta*, 180 F.3d 329, 338 (D.C. Cir. 1999) (internal quotation marks, alterations, and citation omitted); *see also* 42 U.S.C. § 2000e–2(a)(1).  By contrast, a disparate impact claim arises under that statute when "policies or practices that are neutral on their face and in intent . . . nonetheless discriminate in effect against a particular group." *Anderson*, 180 F.3d at 339 (internal quotation marks and citation

omitted); *see also* 42 U.S.C. § 2000e–2(k)(1)(A)(i).  "Both disparate treatment and disparate impact theories under Title VII are available to an injured plaintiff who seeks to challenge [alleged] discrimination that results from an employer's policy of delegating employment decisions to individual supervisors based on subjective or discretionary criteria."  *Ross I*, 267 F. Supp. 3d at 181.  However, because "[i]t is completely unrealistic to assume that unlawful discrimination is the sole cause of . . . statistical imbalances in the composition of [an employer's] work forces[,]" *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 992 (1988) (plurality opinion), a plaintiff who claims discrimination based on a disparate-impact theory "must offer statistical evidence of a kind and degree sufficient to show that *the practice in question* has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group[,]" *id*. at 994 (plurality opinion) (emphasis added).  *See also* 42 U.S.C. § 2000e–2(k)(1)(B)(i).

Section 1981 of Title 42 of the United States Code specifically "protects the right 'to make and enforce contracts' free from racial discrimination."  *Nanko Shipping, USA v. Alcoa, Inc*., 850 F.3d 461, 467 (D.C. Cir. 2017) (quoting 42 U.S.C. § 1981(a)).  "To establish a claim under § 1981, plaintiffs must show that (1) they are members of a racial minority group; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination pertained to one of the activities enumerated in the statute[,]" *Dickerson v. District of Columbia*, 806 F. Supp. 2d 116, 119 (D.D.C. 2011), which include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual

relationship," 42 U.S.C. § 1981(b).[3] "Although the framework for evaluating Section 1981 claims resembles that for Title VII claims, discrimination under Section 1981 must be intentional[.]"  *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 529 (D.C. Cir. 2019) (internal citations omitted).  Thus, with respect to the cause of action under section 1981, a "plaintiff cannot merely invoke his race in the course of a claim's narrative and automatically be entitled to pursue relief.  Rather, [the] plaintiff must allege some facts that demonstrate that his race was the reason for defendant's actions."  *Bray v. RHT, Inc.*, 748 F. Supp. 3, 5 (D.D.C. 1990), *aff'd sub nom. Bray v. Hebble*, 976 F.2d 45 (D.C. Cir. 1992) (internal citation omitted).

Lastly, a plaintiff-employee might be able to maintain a breach of contract claim with respect to an agreement between their employer and the United States, but only if the plaintiff is an intended third-party beneficiary of that contract.  "[F]ederal common law of contracts applies to contracts with the federal government," *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 180 (D.D.C. 2007), *aff'd*, No. 07-5328, 2008 WL 4068606 (D.C. Cir. Mar. 17, 2008) (internal quotation marks and citation omitted), which means that "[t]hird party beneficiaries of a Government contract are generally assumed to be merely incidental beneficiaries[.]"  *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 288 (D.C. Cir. 1993).  This is because "[g]overnment contracts by their nature benefit the public," *Edwards v. Aurora Loan Servs., LLC*, 791 F. Supp. 2d 144, 151

---

[3] Section 1981 "covers all types of contracts, not just employment contracts."  *Patterson v. McLean Credit Union*, 491 U.S. 164, 183 (1989).  However, Plaintiffs' claim under section 1981 appears to pertain only to their own employment contracts with Lockheed Martin, for Plaintiffs allege that Lockheed Martin "unlawfully discriminated against African Americans in denying them the enjoyment of all of the benefits, privileges, terms, and conditions of their contractual relationship with Lockheed[.]"  (Am. Compl. ¶ 197.)

(D.D.C. 2011), and "only in rare circumstances will courts deem individual members of the public to be intended beneficiaries empowered to enforce [such] contracts in court[,]" *id.* To establish her special status as a third-party beneficiary, a plaintiff must "plead facts showing that she is the intended beneficiary of the contract at issue and that the defendant breached a duty to her created by the third-party contract." *Whiting v. A.A.R.P.*, 701 F. Supp. 2d 21, 27 n.5 (D.D.C. 2010), *aff'd*, 637 F.3d 355 (D.C. Cir. 2011).

## II.   DISCUSSION

What is at stake at this point in the instant litigation is whether Plaintiffs have alleged discrimination and contract claims against Lockheed Martin that are plausibly amenable to class-action treatment, and if so, whether discovery will aid Plaintiffs in demonstrating that their proposed class action should be certified under Rule 23. The Court's north star in answering these questions is the indisputable fact that the entire point of "the class-action device" is to "save[] the resources of both the courts and the parties by permitting an issue potentially affecting every [member of the class] to be litigated in an economical fashion under Rule 23." *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). Yet, try as they might, Plaintiffs have failed to make allegations that would plausibly permit an economical evaluation of the purportedly discriminatory operation of the LM Commit system across-the-board and with respect to all of the members of the proposed class, for the reasons that the Court previously articulated in *Ross I* and others that it sketches out below. Instead, the Second Amended Complaint's allegations about the LM Commit evaluation process *necessarily* portend discrimination claims that will exhibit "fatal dissimilarity among class members[,]" which inexorably leads to the

conclusion that "use of the class-action device [would be] inefficient[.]"  *Amgen*, 568 U.S. at 470 (internal quotation marks and citation omitted).

Consequently, Plaintiffs are not entitled to discovery, as they have neither plausibly alleged a "prima facie case" for classwide relief under Rule 23, nor shown that discovery is "likely to produce" substantiation of their class allegations such that pre-certification discovery is warranted.  *Doninger*, 564 F.2d at 1313.  And Plaintiffs' classwide breach-of-contract claim fares no better, since the Second Amended Complaint lacks any allegations that would support a plausible inference that the putative class is an intended third-party beneficiary of the (unidentified) contractual agreements between Lockheed Martin and the federal government that Plaintiffs are seeking to enforce.

A.  **With Respect To Their Discrimination Claims, Plaintiffs Have Not Demonstrated That Discovery Is Likely To Produce Information That Can Substantiate A Prima Facie Case For Classwide Relief Under Rule 23**

Plaintiffs seek to pursue race discrimination claims against Lockheed Martin on a classwide basis due to an alleged companywide discriminatory intent that purportedly manifests itself as Lockheed Martin's knowing failure to change what Plaintiffs say is a common mode of exercising discretion with respect to performance evaluations that has injured all members of the proposed class.  (*See* Am. Compl. ¶ 5.)[4]  The Court is ever

---

[4] For all intents and purposes, the disparate impact and disparate treatment claims that Plaintiffs press in their complaint are indistinguishable, because their pleading alleges a "pattern or practice of systemic intentional discrimination" that takes the form of Lockheed Martin's allegedly deliberate failure to address the disparate impact of LM Commit.  (*See* Am. Compl. ¶ 5; *see also* ¶¶ 96–111 (asserting that Defendant's alleged intentional failure to address the disparate impacts of its performance evaluation system constitutes a form of disparate treatment discrimination).)

mindful that "the allegation that such discrimination has occurred neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the class that may be certified." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982). And, indeed, "there is [often] a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims." *Id.* This Court has concluded that it is simply implausible that Plaintiffs will be able to bridge this wide gap here, even if discovery is granted, for three main reasons.

First of all, it is crystal clear that Plaintiffs' complaint does not allege facts that, if true, would establish that the LM Commit system has injured the members of the putative class *in the same way*. *See Wal-Mart*, 564 U.S. at 349 (holding that any class action complaint must allege facts from which one can infer commonality—which, simply put, is "the same injury" across the entire class); *see also Ross I*, 267 F. Supp. 3d at 198 (explaining that, "in order to establish the requisite commonality with respect to a discrimination challenge to an employee-review system that permits various managers to exercise discretion, Plaintiffs needed to demonstrate that all managers would exercise their discretion in a common way" (internal quotation marks and citation omitted)). Second, even if a common injury across the entire class is plausibly alleged, that injury is not plausibly subject to being established based on classwide proof, because it is implausible that "[c]ommon questions of fact" will "predominate"

over Plaintiffs' individualized proof of injury.  *In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*, 725 F.3d 244, 252–53 (D.C. Cir. 2013) (citing Fed. R. Civ. P. 23(b)(3)).  Third, given the scope of the class that Plaintiffs have proposed, it is implausible that Plaintiffs' alleged common injury could be redressed via one "indivisible . . . injunctive or declaratory remedy."  *Wal–Mart*, 564 U.S. at 360 (citing Fed. R. Civ. P. 23(b)(2)) (internal quotation marks and citation omitted).

Thus, while Plaintiffs might well have plausibly alleged *individual* employment discrimination claims due to the operation of LM Commit as it is described in the Second Amended Complaint, Plaintiffs' pleading is devoid of facts that plausibly suggest the existence of a common injury that might be proven by answering questions that are common to the entire proposed class and that predominate over individualized issues, nor do the complaint's allegations establish that any such injury could be redressed through one, indivisible remedy.  And access to discovery will not help Plaintiffs' quest for class action certification, because, by its nature, LM Commit does not produce injuries that are common to every member of the class, and its allegedly discriminatory effect cannot be proven in a predominantly common way or remedied through the imposition of classwide relief.

      1.    <u>It Is Implausible That The Putative Class Members Have Suffered The Same Injury And That Their Injury Can Either Be Proven In A Predominantly Common Way Or Be Redressed By One Indivisible Remedy</u>

The indisputable gravamen of Plaintiffs' complaint is that "the flawed structure of LM Commit enables subjective decision-making that results in racial disparities." (Am. Compl. ¶ 91.)  However, as this Court observed in *Ross I*, nothing in Plaintiffs'

complaint plausibly indicates that the alleged "subjective decision-making" that the LM Commit system facilitates is exercised in a *common* way across the entire company. *See Ross I*, 267 F. Supp. 3d at 198.  Indeed, quite to the contrary, the additional details in Plaintiffs' Second Amended Complaint make it abundantly clear that LM Commit works in a highly subjective, highly individualized fashion that is the antithesis of the commonality that Rule 23(a) requires.

According to the Second Amended Complaint, as part of LM Commit, "Lockheed instructs each employee to identify approximately three to five 'commitments' each year[,]" whose respective "importance is to be weighted by the employee," and each employee's "supervisor" then "approve[s] or revise[s]" the employee's draft commitments.  (Am. Compl. ¶ 28.)  With these commitments in mind, at the end of each calendar year, "[e]mployees and their leaders write comments concerning the employees' performance" with respect to both the particularized commitments and "certain common criteria" or "behaviors," specified by Lockheed Martin, "upon which all salaried employees will be evaluated[.]"  (*Id.* ¶¶ 29–30).  "Each employee's leader then assigns a preliminary numerical rating to each commitment and each desired behavior" (*id.* ¶ 31), with "70% of [the employee's] absolute overall rating" being determined based upon the preliminary rating for the commitments and "30% of [the employee's] overall absolute rating" being determined on the basis of the preliminary rating for the behaviors (*id.*).  "Once a leader has assigned the employee an absolute overall rating, the next step in the process for all salaried employees throughout the company is . . . a series of meetings to rank all employees under a forced distribution

system." (*Id.* ¶ 36).[5] And, ultimately, Executive Vice Presidents, Senior Vice Presidents, and the Chief Executive Officer "have authority and control over the final rankings." (*Id.* ¶ 39).

Thus, the complaint's broad-brush suggestion that each Lockheed Martin employee is evaluated under the same LM Commit system (*see* Am. Compl. ¶¶ 23, 26), and its observation that LM Commit's evaluation process involves some common criteria (*see id.* ¶¶ 29–30), are not sufficient to make it plausible that the every class member suffers the same injury from the operation of Lockheed Martin's evaluation scheme. That is, notwithstanding Plaintiffs' characterizations, the complaint's specific allegations concerning the operation of LM Commit demonstrate that (1) individual supervisor discretion pervades the entire evaluation system (*see id.* ¶¶ 31, 36–38), (2) there are many different supervisors who exercise discretion across the entire putative class—*i.e.*, no single decisionmaker evaluates each member of the class (*see id.* ¶ 39), and (3) each employee has a say in crafting most of the specific criteria with respect to which he or she will be evaluated (*see id.* ¶ 28), such that the inherent structure of Lockheed Martin's performance evaluation system is *the opposite* of a companywide policy that can plausibly generate a classwide discriminatory outcome for

---

[5] The Second Amended Complaint alleges that, before 2015, "groups of managers and/or executives[,]" which could include as many as "20 or more managers or as few as 5 managers" depending on the number of employees to be evaluated, "arrived at relative overall tier rankings for employees in the same level who were compared to each other and, ultimately, forced all employees into a predetermined company-wide distribution." (Am. Compl. ¶ 37.) But beginning "the fall/winter of 2015," "leaders preliminarily assess employee performance just as they did before 2015," with the difference that these leaders "then meet with one another to compare employees within the same organizational structure (business unit or market segment), as opposed to employees within the same level across business areas[.]" (*Id.* ¶ 38.) At that point, Directors "review and approve or change the rankings that have been assigned by leaders" and Vice Presidents "review and approve or change the overall rankings within business units or market segments[.]" (*Id.*).

the purpose of Rule 23.  And the impropriety of classwide claims with respect to such an evaluation system is well established, for "*Wal-Mart* tells us that local discretion cannot support a company-wide class no matter how cleverly lawyers may try to repackage local variability as uniformity."  *Bolden v. Walsh Constr. Co.*, 688 F.3d 893, 898 (7th Cir. 2012).  Thus, LM Commit differs substantially from the other kinds of policies that Plaintiffs highlight and that other courts have found to allege plausible commonality among the class members.  (*See* Pls.' Reply Mem. in Supp. of Mot. for Class Discovery, ECF No. 56, at 20.)[6]

Even if this Court were to conclude that Plaintiffs' amended complaint plausibly alleges that every member of the class has suffered a common injury (it does not), Plaintiffs' allegations also make it implausible that the alleged race discrimination could be proven on a classwide basis, such that common questions would predominate over individualized issues, as Rule 23(b)(3) requires.  This is because Plaintiffs' class definition includes nearly *all* of Lockheed Martin's African-American employees, irrespective of how, why, or whether the LM Commit system actually injured them. (*See* Am. Compl. ¶ 171 (proposing a class that consists of "[a]ll African-American salaried non-represented employees below the level of Vice President (levels 1 through 7) employed by Lockheed in the United States at any time during the liability

---

[6] For instance, in *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453 (S.D.N.Y. 2013), Judge Furman concluded that it was "plausible that plaintiffs will come forth with sufficient evidence at the class certification stage to demonstrate commonality[,]" *id.* at 464, because the complaint alleged that each employee was evaluated "using a common standard known as 'The KPMG Way[,]'" and all employees were subjected to the same challenged flexible work schedule policy and the same allegedly discriminatory policy of automatically demoting women "who transfer to the United States from an international office[,]" *id.*

period.").)  For example, the class definition presumably includes African-American employees who are perfectly situated and satisfied at Lockheed Martin, such as those employees who have been promoted (though not yet to Vice President), and also those African-American employees whose tier rankings actually reflect their on-the-job performance, such that they have no plausible claim that LM Commit resulted in discriminatory treatment or had a discriminatory impact with respect to them.[7]

In this regard, even the two named Plaintiffs appear to have had different experiences when it comes to the actual operation and impact of LM Commit. (*Compare id.* ¶¶ 169–70 (alleging that Ross, one of the named plaintiffs, received "low to middling ratings" which led "Lockheed not to tap him on the shoulder to become a Vice President" and eventually to "RIF" him, at which point Ross "unsuccessfully applied to over 40 jobs within Lockheed Martin, the majority of which were at his current level of Director and some of which were below the Director level") *with id.* ¶¶ 13, 162, 167–68 (alleging that Josey, the other named plaintiff, "has been employed by Lockheed since 1994" and that "the absence of a history of consistently high or exceptional performance appraisals [] negatively affect[ed] her ability to advance at Lockheed"—for example, in 2015, her "overall ranking placed her in the second out of four tiers, not the top tier"—and, even though she "applied for at least 55 positions at

---

[7] For purposes of "monetary relief only," and not with respect to the other types of relief sought, the complaint excludes from the class definition "individuals who did not receive any performance evaluations during the liability period with a tier ranking below 'significantly exceeded commitments' while employed at Lockheed." (*See* Am. Compl. ¶ 171.)  But even with this exclusion, the class definition is still fatally broad, for it includes employees who received the ranking they deserved because they actually performed at a below-average or average level, and it also includes employees who received some (but not all) above-average tier rankings during their tenure with the company.

Lockheed," some of which "would have been promotions[,]" she "was selected for interviews for only seven positions" and ultimately remained in her role).)  Any fair determination of whether or not either of the two named Plaintiffs have actually suffered discrimination due to the operation of LM Commit would most certainly require an evaluation of their individual circumstances, including an assessment of whether LM Commit led to evaluations that were not actually reflective of their performances.

Thus, in persistently pressing their proposed class action, Plaintiffs have failed to account for how discrimination cases are actually established when the claim involves an allegedly discriminatory and discretionary performance-evaluation scheme, and Plaintiffs have also essentially ignored the potentially wide variation between the different evidentiary showing that will be needed with respect to the spectrum of individual African-American employees at Lockheed Martin.  Those African-American Lockheed Martin employees who claim that they were entitled to a different score than they ultimately received under the multi-faceted LM Commit system will have different allegations (involving different proof) than those African-American Lockheed Martin employees who admittedly received a fair final score based on their actual performance but maintain that there was discriminatory treatment of them by individual evaluators at some point during the process, and still others might assert that they received the score that they deserved based on the non-discriminatory subjective judgments of the evaluators but that they were somehow injured by the evaluation process in some other respect.  At the end of the day, each class member would ultimately have to present their particular circumstances in order to establish successfully whether and to what

extent the LM Commit system injured him, and that situation unquestionably defeats the predominance that is necessary for a class action to be maintained. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (clarifying that the predominance prerequisite is not satisfied if "members of a proposed class will need to present evidence that varies from member to member" (internal quotation marks omitted)). In other words, a class action cannot be sustained where, as here, Plaintiffs cannot "prove, through common evidence, that all class members were in fact injured[,]" and that each was subjected to discrimination in the same way, because their the discrimination claims "turn[] on individualized proof of injury, [for which] separate trials are in order[.]" *In re Rail Freight Fuel Surcharge*, 725 F.3d at 252–53. *Cf. In re Johnson*, 760 F.3d 66, 70 (D.C. Cir. 2014) (certifying a class of all African-American Special Agents who had bid for promotion to a GS-14 or GS-15 and were not promoted, where the Director of the Secret Service "made [all] final promotion decision[s]").[8]

Nor is it plausible that the proposed class members' injuries could be redressed through one indivisible remedy for the purpose of Rule 23(b)(2).[9] In this regard,

---

[8] This is not to say that, to proceed as a class, Plaintiffs must eventually "prove that *each element* of [their] claim is susceptible to classwide proof." *Amgen*, 568 U.S. at 469 (emphasis added; internal quotation marks omitted). But the key predominance issue is "the relation between common and individual questions in a case[,]" *Tyson Foods*, 136 S.Ct. at 1045, and there is no Rule 23(b)(3) predominance when there is no plausible allegation that "common evidence [will] show [that] all class members suffered *some* injury[,]" *In re Rail Freight Fuel Surcharge*, 725 F.3d at 252 (emphasis in original), or where it is implausible that the alleged class is "sufficiently cohesive to warrant adjudication by representation[,]" *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

[9] In their "Prayer for Relief," Plaintiffs "respectfully request" that this Court: "Declare that the practices described in this Complaint exist at Lockheed and are unlawful"; "Order Lockheed to adopt policies and practices designed to end discriminatory treatment of African-American employees and/or practices that have a disparate impact adverse to African-American employees"; "Award back pay, bonuses[,] and other job benefits to make the Plaintiffs and Class members whole"; "Award front pay to the extent that Plaintiffs and Class members cannot be placed in the positions that they would have occupied but for the discrimination"; and "Order such and further relief as the Court deems just and

Plaintiffs request classwide declaratory and injunctive relief for "all African-American[s] . . . employed by Lockheed in the United States *at any time* during the liability period." (Am. Compl. ¶ 171 (emphasis added).)  But given that Plaintiffs' class definition sweeps so broadly as to include *former* employees, it is hard to see how the Court could craft an "indivisible" remedy, whether declarative or injunctive, that would apply to the "whole" class, as is necessary to sunstain a valid (b)(2) class.  *Wal-Mart*, 564 U.S. at 362–65.  Indeed, with the exception of those class members who would be seeking reinstatement, former employees "generally lack[] standing to seek injunctive or declaratory relief against [their] former employer, as there is no prospect that [they] will be injured in the future." *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 465–66 (S.D.N.Y. 2013); *see also Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (same).  Consequently, whatever injunctive or declaratory relief this Court could give to *current* employees of Lockheed Martin would not (and could not) cover Ross, one of the named plaintiffs, who is a *former* employee not seeking reinstatement.  (*See* Am. Compl. ¶¶ 12, 169–70).  And this alone makes Rule 23(b)(2) indivisibility plainly implausible.

### 2.    Pre-Certification Discovery Will Not Cure These Defects

In response to this Court's previously articulated concerns about the viability of the proposed class action, Plaintiffs' principal argument is that they should be allowed to conduct pre-certification discovery so that they can "show in their motion for class certification that there will be common answers to at least some of [their] disputes[.]"

---

proper."  (Am. Compl. at 55–56.)

(Pls.' Mot. at 16.)  Thus, Plaintiffs essentially maintain that any analysis of whether their amended complaint plausibly alleges the Rule 23 requirements is "premature[.]" (Pls' Notice of Supp. Authority ECF No. 57, at 1; *see also* Pls.' Reply Mem. in Supp. of Mot. for Class Discovery, ECF No. 56, at 14.)  As a general matter, it might seem entirely reasonable to permit a plaintiff who allegedly observes disparate outcomes in a workplace, and who claims that unlawful discrimination has caused those disparities, to marshal the formidable force of the Federal Rules' discovery process to ferret out potentially problematic employment practices.  But pre-certification discovery is not an opportunity to engage in a "fishing expedition" concerning company policies that cannot plausibly result in a common injury across the putative class.  *Flores v. Starwood Hotels & Resorts Worldwide Inc.*, No. 14-cv-1093, 2015 WL 12912338, at *3 (C.D. Cal. May 18, 2015).  And, here, Plaintiffs' allegations about LM Commit *on their face* render classwide injury implausible, for the reasons discussed above.

Put another way, it is the *nature* of the allegedly discriminatory policy that Plaintiffs wish to explore that makes it clear to this Court that no amount of discovery would make Plaintiffs' class allegations viable, and what is at stake here is a foundational problem that transcends a mere concern over whether Plaintiffs' Title VII and Section 1981 class allegations have a sufficient factual basis.  Instead, by their own terms, Plaintiffs' allegations about the LM Commit system are such that classwide injury is implausible, even if Plaintiffs' description of the system's operation is factually accurate.  And, as a result, Plaintiffs have not carried their burden of presenting a plausible prima facie case with respect to their Title VII and section 1981 claims.

Finally, the Court also takes issue with Plaintiffs' suggestion that the deficiencies this Court has identified with respect to the viability of its proposed class action could be cured by crafting a not-yet-defined issue class under Rule 23(c)(4). (*See* Am. Compl. ¶ 180.)  Again, the only thing that the members of the putative class appear to have in common is that they are current and former African-American employees of Lockheed Martin, and were thus evaluated pursuant to the highly individualized LM Commit system, just like all of Lockeheed Martin's other employees.  And the LM Commit system contains so many levels of subjectivity (including the employee's own subjective assessment of the characteristics that are to be evaluated) that it simply cannot be said to operate in the same manner across the entire workforce or any subgroup thereof, much less produce a common injury that can be established by common proof, such that the answer to the collective question of "why did I receive this rating/ranking as part of the LM Commit process?" leads to a single answer that predominates over individual issues.  *Cf. Wal-Mart*, 564 U.S. at 352 ("Without some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." (emphases in original)).  Thus, even though the D.C. Circuit has not yet determined whether an issue class can be deployed to derogate from a class's lack of predominance, *see In re Johnson*, 760 F.3d at 75, there is no question that Rule 23(c)(4) is a "discretionary, not mandatory" tool, *In re Brewer*, 863 F.3d 861, 876 (D.C. Cir. 2017), and one that is of no help where, as here, it is entirely implausible that *any* material common question exists, *see, e.g.*, *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Stated simply, the problem with Plaintiffs' Title VII and Section 1981 classwide discrmination allegations is *not* that they lack a sufficient factual basis (which might be cured with the benefit of additional discovery), but rather that the nature of the performance review system at issue is such that a classwide injury and/or classwide proof and/or an indivisible remedy is implausible. Therefore, Plaintiffs have failed to demonstrate that they can plausibly satisfy the requirements of Rule 23, such that discovery can potentially boost their certification efforts from plausible to proven.

**B.    Plaintiffs Fail To Allege A Plausible Class Claim For Breach Of Contract Because They Allege No Facts To Support The Allegation That They Are Third-Party Beneficieries**

With respect to their class-action contract claim, Plaintiffs insist that they are "third party beneficiaries of Lockheed's contractual provisions requiring equal employment opportunity and affirmative action" (Am. Compl. ¶ 201), and they argue that they need discovery so as to "seek[] Lockheed's contracts with the federal government to support Plaintiffs' breach of contract claim" (Pls.' Mot. at 26). Even setting aside the entirely speculative nature of a breach-of-contract claim that is based on a particular agreement in a contract that Plaintiffs are not able to identify, here, Plaintiffs have also failed to make a non-speculative allegation that the supposed anti-discrimination provisions in the unidentified contracts between Lockheed Martin and the federal government were plainly intended to create *a duty towards the class members*, as is necessary to support any plausible claim that Plaintiffs are third-party beneficiaries of said contracts.

Plaintiffs' amended complaint alleges *no* facts that plausibly support the existence of the requisite clear intent to allow Plaintiffs to sue for the breach of any

contracts between Lockheed Martin and the federal government.  Instead, the complaint merely surmises that "the overriding objective of the [Equal Opportunity] clauses in the contracts between Lockheed and the United States Government was to protect the rights of workers employed by federal contractors . . . and to advance their access to job opportunities through affirmative action."  (*See, e.g.,* Am. Compl. ¶ 205.)  But it is by now well established that, to show the requisite clear intent under the circumstances presented here, it is not sufficient to appeal to "a contract's recitation of interested constituencies, vague hortatory pronouncements, statements of purpose, explicit reference[s] to a third party, or even a showing that the contract operates to the third parties' benefit and was entered into with them in mind."  *Edwards*, 791 F. Supp. 2d at 151; *see also Chancellor Manor v. United States*, 331 F.3d 891, 901 (Fed. Cir. 2003) (holding that Plaintiffs must allege that "the contract not only reflects an express or implied intention to benefit the party, but that it reflects an intent to benefit the party *directly*[.]" (emphasis in original)).  And, indeed, "only in rare circumstances will courts deem individual members of the public to be intended beneficiaries empowered to enforce those [government] contracts in court."  *Edwards*, 791 F. Supp. 2d at 151.

Plaintiffs offer rank speculation about the existence of contracts between Lockheed Martin and the federal government, which may or may not include anti-discrimination clauses that may or may not directly establish that Plaintiffs are the intended third-party beneficieries of those contracts.  (*See* Am. Compl. ¶ 204 ("Upon information and belief, Lockheed and the United States government have entered into numerous contracts containing an EO clause" and "[e]ven if the qualifying contracts do not contain such clauses, the applicable regulations provide that EO clauses are deemed

included in all qualifying contracts and subcontracts by operation of law").)  And this effort to fashion a classwide contract claim is obviously a bridge too far.  As this Court explained during the motions hearing, Plaintiffs "can't make a claim based on a speculative view of what might be in a contract[.]"  (Hr'g Tr., ECF No. 43, at 60:16–17.)  They have likewise failed to "nudge[] their [breach of contract] claim[] across the line from conceivable to plausible," *Twombly*, 550 U.S. at 547, so as to carry their burden with respect to seeking pre-certification discovery.

## III.   CONCLUSION

Plaintiffs' discrimination claims pertain to a highly individualized performance-evaluation system that, by its nature, does not plausibly give rise to a classwide common injury that can be evaluated based on common proof or that can be redressed by ordering a single, indivisible remedy.  And because Plaintiffs have now twice failed to make plausible allegations with respect to the viability of their putative class under Rule 23, the only benefit of pre-certification discovery would be to commence a fishing expedition for new allegations concerning the effects of Lockheed Martin's evaluation scheme, which would ultimately do little to shore up Plaintiffs' Rule 23 showing.  It is clear beyond cavil that a plaintiff must satisfy Rule 8's pleading requirements before discovery is warranted, and that the mere filing of a complaint "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678–79 (internal quotations omitted).  Thus, this Court declines these Plaintiffs' invitation to relax the plausibility requirement in the context of Rule 23 to the point where discovery becomes presumptive upon the filing of a class complaint.

The bottom line is this: in this Court's view, it is entirely implausible to infer that Plaintiffs' proposed 5,000-member class has suffered a common injury from Lockheed Martin's implementation of LM Commit (as Plaintiffs describe that system), and because it is likewise implausible to conclude that any such common injury could be redressed for each member of the class through a single remedy, or could be proven through common questions of fact that predominate over individualized proofs of injury, Plaintiffs have not alleged that a plausible viable class exists under Rule 23, as is necessary to have a plausible prima facie case for class-action certification that warrants further discovery.  Accordingly, as set forth in the Court's Order of May 28, 2020, Plaintiff's motion for pre-certification discovery is **DENIED**.

DATE:  July 21, 2020

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge

26